TRUSTEES OF THE CINCINNATI SOUTHERN RAILWAY *v.* GUENTHER, Trustee, etc.

*(Circuit Court, E. D. Tennessee.* February 18, 1884.)

1. AUTHORITY OF TAX COLLECTOR.
    A tax collector has no authority to compromise a claim against a tax-payer.
2. TAXATION—UNCONSTITUTIONAL ASSESSMENT—ESTOPPEL.
    In Tennessee, when taxes have been assessed and collected under an unconstitutional statute, the municipality receiving them is not estopped by such receipt from disputing the correctness of the valuation and making a reassessment.
3. SAME—ASSESSMENT BY COLLECTOR—RAILROAD PROPERTY.
    The statute of Tennessee empowering collectors of taxes to assess property which, by mistake, has escaped assessment in regular course, applies to the property of railroads as well as to that of private individuals.
4. SAME—UNEQUAL VALUATIONS—VALIDITY OF ASSESSMENT.
    An exaggerated valuation intentionally put upon a particular class of property renders unconstitutional a tax imposed in accordance therewith; but the tax-payer may be required to pay the amount justly due, without the formality of a new assessment.
5. VALUE OF RAILROAD PROPERTY.
    The value of railroad property is to be determined largely by reference to present and prospective profits, and not by the cost of construction alone.

In Equity.
*C. D. McGuffy* and *Thornburgh & Andrews,* for complainants.
*James Sevier* and *Luckey & Yoe,* for respondent.

KEY, J.    Complainants own a railroad extending from Cincinnati, Ohio, to Chattanooga, Tennessee.    This line of road passes through Roane county, Tennessee, for the distance of 15 miles and a half.    An act of the legislature of Tennessee, passed March 24, 1875, p. 100, provides for a board of railroad tax assessors, who are to assess the taxable value of the railroad property of the state, and how the same is to be apportioned to the different counties through which these roads run.    Under this statute the complainants were assessed for and on behalf of the county of Roane the sum of $1,235.17 for the year 1881, which assessments were paid.    At the September term, 1881, of the supreme court of Tennessee, it was decided that the mode of assessment provided by the act of 1875 was unconstitutional. *Chattanooga* v. *Railroad Co.* 7 Lea, 561.    On February 15, 1882, the respondent issued a citation or notice to complainants reciting that the assessments under the act of 1875 were unconstitutional, and that the taxes paid for the years 1880 and 1881 were paid upon an undervaluation, and notifying complainants to appear for the purpose of making a proper assessment.    Complainants did not appear, and respondent proceeded to make new assessments, according to which the taxes due the state and Roane county for the year 1880 amounted to $5,504.79, and for the year 1881, $5,566.68.    Complainants appealed from this assessment to the chairman of the county court of

Roane county, who reduced the assessment somewhat, but not very considerably.

The bill in this case is filed to enjoin the collection of the taxes under the last assessment upon several grounds. It is insisted that the payment of the taxes assessed originally by the board of commissioners was a settlement and compromise in respect to these taxes, because respondent insisted upon their payment, and complainants objected to the validity of at least a portion of the tax. It appears from the receipts executed for the taxes that complainants paid them under protest. As the law provides that taxes illegally assessed may be recovered back by the tax-payer, if paid under protest, these transactions, upon their face, could hardly be regarded as a compromise. But this aside, the respondent, as the trustee and tax collector of Roane county, had no authority to compromise with complainants in this respect. He was bound to collect taxes as assessed. It is further insisted that as the agents of the state had assessed taxes against complainants under the forms and terms of the law of the legislature, and the county of Roane had recognized its action by collecting and appropriating the taxes under the assessments, the county of Roane is estopped from denying the validity of the first valuation, and in consequence the assessments in controversy are void. There is much force in this position, and I am not sure but I might concur in this view of the case if the question were an open one. But we are considering laws,—statutes of the state of Tennessee,—and this court is bound by the decisions of the supreme court of the state in regard to the construction of the statutes thereof, provided no federal or constitutional right is invaded. The supreme court of Tennessee, in the decision already referred to, (*Chattanooga* v. *Railroad Co.* 7 Lea, 563,) says:

"We may assume in this case that if the position of the plaintiff is correct, that the assessment by the board of assessors for railroads is unconstitutional as to the property owned by the company in the city of Chattanooga, then there has been no assessment at all, and the property may well be assessed for taxation, and the railroad company be compelled to pay the taxes thus assessed."

In that case, as in the one under consideration, the railroad company had paid the taxes for the years 1877, 1878, and 1879, and tendered the sum due for 1880, according to the assessment and valuation made by the state railroad assessors, as provided for by the acts of the legislature of 1875 and 1877, and the court held that the tax as assessed by the board of tax assessors for railroads was unconstitutional,—was void for that reason; so that, according to the paragraph already quoted, "there had been no assessment at all, and the property may be well assessed for taxation, and the railroad company be compelled to pay the taxes thus assessed." The whole scope of this decision is opposed to the idea of the estoppel claimed by complainants.

Complainants say that the assessments for taxes made in 1882 for the taxes of 1880 and 1881 are void for the want of authority in the respondent or the county court to make them. The general tax law of April 7, 1881, p. 251, contains a provision that if it should come to the knowledge of the chairman, or judge or clerk of the county court, the county trustee, sheriff, or tax collector of any county, that any person, company, firm, or corporation had not been assessed as contemplated by the act, or had been assessed on an inadequate amount, it should be the duty of such officer to cite such person, company, firm, or corporation, or their agent or attorney, to appear before him, so that an assessment may be made, and such officer was authorized to make the proper assessment. A similar provision is found in the act of 1873, p. 175. The act of March 12, 1879, p. 93, says "that all collectors of taxes are hereby made assessors to assess all property which, by mistake of law or facts, has not been assessed; and it is hereby made the duty of such collectors in all cases whereby property has not been assessed, but on which taxes ought to be paid by law, to immediately assess the same and proceed to collect the taxes. It is insisted that railroad property was not in the contemplation of the legislature when these acts were passed, and is not embraced in them. That railroads were taxed under other acts, and assessed through different agencies and instrumentalities from those assessing other property, is true. It has not been shown that any special provisions of law have been made for railroads which might have escaped taxation, and the terms of the acts of 1873, 1879, and 1881 are sufficiently general to embrace railroads in their scope and phraseology. When we add to these considerations the authority of the case of *Chattanooga* v. *Railroad Co., supra,* we conclude that the tax collector was clothed with authority in the premises. The subsequent action of the county court did not invalidate the assessment, for the chairman thereof might have assessed the property as well as the tax collector for the year 1881, and the tax collector and chairman might consult with the members of the county court, or with other persons, as to the valuation of the property. No formalities or methods are prescribed by which he is to be governed in arriving at his conclusions in regard to such assessments as he may make.

It is said by complainants that the taxes for the year 1880 cannot be collected because the respondent was not installed into office until September of that year; that the taxes for that year were assessed in June, according to the terms of the law; and the case of *Otis* v. *Boyd,* 8 Lea, 679, is relied upon as authority for this position. That case does decide that the tax collector cannot assess and collect taxes upon property which has not been assessed for any year previous to the current year in which he entered upon his office. But it seems to me that the reasoning in that case does not sustain the position of complainants. Under the terms of the law, the tax assessor has no power to assess except in cases in which there has been no as-

sessment, or in which there has been an inadequate one. He is compelled to wait until after the regular assessors have made their reports and returns before he can ascertain whether property has been omitted, or inadequately taxed. If he may wait a week, he may a month, or six months, or more, so that he act thereon during his term. The nature of his duties in this respect leads to this conclusion from the necessity of the case. It may be said, in regard to most of the grounds assumed by complainants in opposition to the payment of these taxes, that it is not denied that the property of complainant is subject to a tax for the benefit of and on behalf of Roane county, and that it is the duty of complainants to pay such tax. It is the invalidity of the tax from the method of its assessment which is relied upon. In such cases all doubts are resolved in favor of the tax. The defense must make its right to resist the collection of the tax clear and manifest before it can have relief.

Complainants insist, however, that though all the foregoing reasons for their relief fail, yet the taxes assessed against them violate the constitution of the state of Tennessee in this: That the tax against complainants is unjust and unequal, and railroad property is valued at a higher rate than property of other character; that this inequality is produced because railroad property, as a class or species, is valued for taxation at a higher rate according to its value than other kinds or species of property in Roane county; that this higher valuation is made and arrived at by establishing a different basis of valuation for railroad property from that used in valuing other kinds of property, and that it is done intentionally, and for the purpose of discriminating against railroads. Mere inequalities in taxation will not vitiate a tax if they be accidental and unintentional. These must occur under any system of assessment, and especially under that in force in this state, in which every civil district and ward has its own assessor. There will of necessity be many instances in which property will be assessed at more than its value, and more, perhaps, in which it will be assessed at less than its value. These errors and discrepancies will not vitiate the tax; they are inevitable. But a different result follows should a standard of valuation be used for one species of property which is different from that used for another, if the end reached necessarily is the taxation of the one species higher than the other. The constitution of Tennessee establishes that "all property shall be taxed according to its value; that value to be ascertained in such manner as the legislature shall direct, so that taxes shall be equal and uniform throughout the state. No one species of property from which a tax may be collected shall be taxed higher than any other species of property of the same value." Article 2, § 28. With something of iteration the principle is emphasized that taxation shall be equal and uniform. If unjust discrimination and difference is made, the tax so imposed may be restrained and its collection pre-

vented. *Pelton* v. *Nat. Bank,* 101 U. S. 143; *Cummings* v. *Nat. Bank,* Id. 153; *Chattanooga* v. *Railroad Co. supra.*

The record in the case under consideration does not show very clearly what particular method of valuation was followed in assessing the value of railroad property, or that of other property, but it does appear that real estate was, as a rule, taxed upon a valuation less than its real value. The respondent in his deposition says, at a rate less by 10 per centum than its real value. But from the other proof in the cause, and from what a court may judicially know of the history of tax assessments in this region of the country, we think that lands in Roane county were taxed at a valuation on the average of one-fourth below their real value. It is quite apparent that the property of complainants was assessed at a valuation much above its real value. It does not distinctly appear what rule was adopted in the valuation of lands, but it is clear that it was not intended to assess them at their real value, but below it; nor were they assessed, as a rule, according to their cost. It is equally clear that it was intended to assess railroad property at its full value, and that in doing so there was fixed upon it an exaggerated and unreasonable valuation. This difference was not accidental. It follows from this intentional inequality that the complainants are entitled to relief, but how far and to what extent is a question of interest. Shall the entire tax be declared illegal and void because of the illegality of the assessment, or shall only the collection of so much of it as may be in excess of a reasonable and proper tax be restrained? As already stated, all presumptions and intendments should be in favor of the tax, in cases of doubt. If the entire tax were declared void, it is probable that under the ruling of the supreme court of the state in the case of *Otis* v. *Boyd,* 8 Lea, 679, valid assessments could not now be made for the taxes of the years 1880 and 1881. The supreme court of the United States, in the case of *Cummings* v. *Nat. Bank,* 101 U. S. 153, held that the tax in that case was unconstitutional because the rule of equality in taxation had been disregarded, and that the appropriate mode of relief in such cases is, upon payment of the amount of tax which is equal to that assessed on other property, to enjoin the collection of the illegal excess. The same doctrine is again asserted in *Nat. Bank* v. *Kimball,* 103 U. S. 733, and in *Sup'rs* v. *Stanley,* 105 U. S. 305. I conclude, therefore, that so much of the tax as is reasonable and just should be paid by the complainants, and the excess enjoined.

Then, what is a reasonable valuation of complainants' property as compared with that fixed upon other property for taxation? For this litigation should be so conducted that such taxes as are proper may be paid at the earliest moment practicable, and the case should now be finally determined if the record is in such a state of completeness as to allow it. The value of a railroad, especially a new one, is a problem of no easy solution. It is quite evident that the respondent assessed the value of that part of this railroad in Roane county

mainly from the cost of its construction. In his answer he says that "he believes that the *cost* and *value* of the road lying and situate in Roane county was and is above the average of said road. There are several tunnels and bridges in said county, and *cost*, as he is informed, about as follows: Emory river bridge, $100,000; White's Creek bridge, $20,000; Kegan's tunnel, $250,000," etc. To make the cost of a thing, especially a railroad, the measure of its value, or even a chief constituent thereof, is most fallacious. A railroad that costs $20,000 per mile is worth as much as one that costs $50,000 per mile, if its business and net earnings be as great or greater. Indeed, it is more valuable, in one sense, as it makes a better return on the investment. The expenses of keeping a road in repair which runs through hills and mountains, and over rivers, are greater, because it requires greater labor to keep its tunnels, bridges, and road-bed in repair, than it does in case of a road over a level country. There must be a greater number of watchmen at the bridges, tunnels, curves, and cuts and fills. The grades are heavier and running expenses more. Sometimes, indeed often, property may cost much and be worth very little, or cost little and be of great worth. Its cost may be looked to as an element entering into its value, but not as its sole or even chief element. The earnings of a railroad, present and prospective, must form a most important ingredient in the estimation of its value. What amount of business has it done, is it doing, and what is it likely to do? What through freights, local freights, etc., does it carry and will it carry? Many things must be considered in arriving at its value. There are 15½ miles of this road in Roane county. One of the engineers under whose supervision it was constructed shows that the cost of this part of the road was about $40,000 per mile. It has been assessed at that rate for the year 1880, and at $44,000 for the year 1881. The officers of the road, who predicate their estimate of value solely upon the net earnings of the road for these two years as compared with its cost, fix the value of the same part of the road at about $16,000 per mile for 1880, and nearly $20,000 for 1881. We know, as an historical fact, that railroads in this section of the country have never proved a profitable investment to those whose capital built them, even in the localities most favorable for their construction and business. We know that this road runs, for a great part of its way, through a mountainous and rugged country, and was built at a heavy outlay. The country through which it runs is, much of it, wild and undeveloped, and what business may grow up along its line is problematical. Taking all the known and proven facts into consideration, I am of the opinion that about 50 per cent. of the original cost would be a fair valuation for 1880, and that about $2,000 per mile should be added to it for 1881. I direct, therefore, that a valuation of $20,000 per mile be assessed for 1880, and $22,000 per mile for 1881. I think this will be a fair and full assessment upon this property as compared with the rate at

which other property is valued for taxation by the county, and is more likely to be above than below the real value. It is manifest that the rolling stock and other personal property which were assessed for taxes against complainants did not belong to complainants, but to their lessees, and therefore complainants should not be taxed on its account.

The next question raised by complainants is that the act of the general assembly of Tennessee of 1879, p. 282, authorized a county tax of not exceeding 30 cents on the hundred dollars, but that the county court of Roane county, after levying a tax of 30 cents, levied a special tax of 10 cents additional. It is insisted that this special tax of 10 cents is void. This tax was levied, it is said, to repair county buildings. Complainants' position is sustained by the case of *Railroad* v. *Franklin Co.* 5 Lea, 711, and *Railroad* v. *Marion Co.* 7 Lea, 664. Special authority must be shown to have been conferred by law on the county court to levy this special tax before it could legally impose it. The repair of the county buildings is an ordinary county purpose, and the limit of taxation for such purposes was 30 cents. A school tax of 25 cents on the hundred dollars was levied for 1880. The foregoing case of *Railroad* v. *Franklin Co.* decided that a tax of 20 cents on the hundred dollars was the limit of the school tax which the legislature authorized counties to impose for the year 1880. Therefore, to the extent of five cents upon the hundred dollars, the school tax levied by the county of Roane was illegal. The collection of the special tax aforesaid, and of the excess of the school tax herein mentioned, will be enjoined as against complainants. The sums paid by complainants as taxes for the years 1880 and 1881 will be credited on the amounts due from them for the respective years, as ascertained and declared by the decree in this case as herein directed. Interest will be charged upon the balance due from complainants from the date of the filing of the bill in this cause. The costs of the cause will be paid by respondent. No account need be taken, as the amounts due under the decree can be readily arrived at by a simple calculation.