THE STATE ex rel. GOTTLIEB, Collector, Plaintiff and Appellant, v. WESTERN UNION TELEGRAPH COMPANY, Defendant and Appellant.

### In Banc, December 3, 1901.

1. **Taxation**: DISCRIMINATIONS: UNCONSTITUTIONAL ASSESSMENTS. In order for a corporation to establish discrimination against itself in the matter of taxation, or that it has been denied the equal protection of the laws, it must show (the taxation laws themselves being unobjectionable) that the assessing officers have combined together to establish a rule of valuation the necessary result of which is to tax one species of property higher than others. A showing by the testimony of one member of the assessing board that property generally, in his judgment, was assessed at only thirty-five or forty per cent of its value, does not establish such a combination, in the face of a law that all property shall be assessed at its true value in money, and the presumption that all officers do their duty.

2. ———: ———: ASSESSMENT BY STATE BOARD: CORRECTION IN EQUITY COURT. A corporation which alleges discrimination against itself by a board which is given the power of correcting the inequalities and irregularities of assessors (whose official action, therefore, is judicial in its character and not open to collateral attack), can not raise the question of discrimination as a defense in an action at law against it by the county collector to collect taxes, but must resort to a court of equity to restrain the exaction of the excess of assessment, on the payment or tender by it of what is admitted to be due.

3. ———: OVERVALUATION: DEFENSE. Where the defendant had any property of the character mentioned in the tax assessment, mere overvaluation is no defense. Nor is such defense available in a court of law and a suit on a taxbill is a suit at law.

4. ———: FRANCHISES: WESTERN UNION TELEGRAPH COMPANY: GOVERNMENTAL AGENT. The franchise which the Western Union Telegraph

State ex rel. v. Western Union Tel. Co.

Company derived from an act of Congress constitutes the company a governmental agent as between the departments of the government, and an instrument of interstate commerce, and gives it the right to enter a State and transact business which no State has authority to prevent, but does not exempt the tangible property of the company from taxation by the State in which such property is located.

5. ———: ———: ———: ———: NEW YORK FRANCHISE. The franchise of the Western Union Telegraph Company—that is, its right to exist and be a corporation and do a telegraph business—is not derived from the government of the United States, but from the State of New York. That State created it and gave it its right to do business. Nor did its acceptance of the act of Congress, or the fact that it is an instrument of interstate commerce, exempt its property in this State from taxation.

6. ———: ———: ———: HOW ESTIMATED. The franchise of a foreign corporation doing business under the laws of this State, and over the country generally, as for instance, a telegraph company, is property and is subject to taxation, either directly, in the proportion that the portion of the franchise exercised in this State bears to the proportion of the franchise exercised in all the States, or indirectly, by being impressed upon the tangible property owned by it, thereby increasing its value, and by considering the franchise and its tangible property as a system, and then assessing the part of the property forming a part of a system located in this State as of its proportionate value of the whole property constituting the system.

Appeal from Jackson Circuit Court.—*Hon. Jno. W. Henry,* Judge.

REVERSED AND JUDGMENT HERE.

*Edward C. Crow,* Attorney-General, and *Sam B. Jeffries,* Assistant Attorney-General, for the State, plaintiff-appellant.

(1)   The point is made that by the acceptance of the foregoing act of the Federal Government the telegraph company "is constituted a government agency within the meaning of the law exempting such agencies from the burdens of taxation imposed by the States." In this counsel are in error for two reasons: First, because the privileges conferred upon companies

of this character by the act of the Federal Government, carries with it no exemptions whatever from the ordinary, burdens of taxation of a State in which they may own or operate lines of telegraph; second, the tax here imposed is the ordinary tax levied against the company in proportion to the value of its property in this State. It is the ordinary property-tax authorized by our State Constitution in the manner warranted by law. The mere fact that a corporation receives its charter and pecuniary or other aid from the United States does not fix its character as a Federal agency. Nor does the fact that the United States sometimes makes use of it for its purposes, as it might of a similar convenience brought into existence in some other way, constitute or make it a government agency. Cooley on Taxation, 85; Huntington v. Railroad, 2 Sawyer, 503; Railroad v. Peniston, 18 Wall. 5; Thompson v. Railroad, 9 Wall. 579; Wes. U. Tel. Co. v. Mass., 125 U. S. 530; Wes. U. Tel. Co. v. Mass., 141 U. S. 40. The Western Union Telegraph Company owes its existence to the laws of the State of New York, and not to any act of the Federal Government. It was not created as a Government agency, nor, by accepting the terms of the act of Congress of July 14, 1866, did it become a Government agency, so as to exempt it from State taxation. The acceptance of the statute made no change in the corporate identity of the company nor did it in anywise change its relation to the State of its birth. The most that can be said is that it became a Government agency by virtue of a contract · with the United States. For the use of the military and post roads it agreed to perform certain services for the Government. To exempt it from State taxation would, as suggested by the courts, open the way to a general exemption as to all who may be found performing services for the Federal Government. It would, as has been said, "remove from the reach of the State, for taxing purposes, all of the property of every agent of the Government. Every corporation engaged in the transportation of mails or of Government property, of every description by

land or water, or in supplying materials for the use of the Government, or in performing any service whatever, might claim the benefit of the exemption. The effect of which would be to embarrass and injure the State to the benefit of the individual rather than the nation." Cooley on Taxation, 85; Thompson v. Railroad, supra. The Supreme Court of the United States has on several occasions held that there is an intangible or franchise value belonging to the Western Union Telegraph Company in other States. West. U. Tel. Co. v. Norman, 77 Fed. Rep. 18; West. U. Tel. Co. v. Mass., supra; West. U. Tel. Co. v. Taggart, 162 U. S. 1; Adams Express Co. v. Ohio, 166 U. S. 217; Bridge Co. v. Kentucky, 177 U. S. 626; Henderson Bridge Co. v. Illinois, 166 U. S. 154; Adams Express Co. v. Ohio, 165 U. S. 194. (2) The State board is clothed with sufficient authority to assess the intangible property values of telegraph companies. Our Constitution and statutes provide, except such as is specifically exempted by the Constitution, that all "property" shall be assessed for taxation. Section 9123, Revised Statutes 1899, in defining the various property terms, concludes with a clear definition of the term "property." As heretofore stated, it is defined as follows: "The term 'property,' wherever used in this chapter shall be held to mean and include every tangible and intangible thing being the subject of ownership, whether animate or inanimate, real or personal." No form of property or value can escape the terms of this definition and by it the board was justified in listing the intangible property as "all other property." It is not essential that all the details shall be set out in the statutes authorizing the assessment. Where the power is confided, any reasonable means and details may be employed. Railroad v. Governor, 74 N. C. 712; Railroad v. Governor, 13 Wall. 134; Railroad v. Commissioners, 87 N. C. 134; Railroad v. Commissioners, 72 N. C. 10; Life Association v. Board of Assessors, 49 Mo. 522; People v. Adams, 125 N. Y. 471; Ins. Co. v. Yard, 17 Pa. St. 331; Laird v. Hiester, 24 Pa. St. 452.

(3) It will not be disputed that equity will not relieve against a mistake in judgment as to the valuation to be placed upon any particular piece of property. The courts can not, in such cases, take upon themselves the function of a revising and equalizing board. Newman v. Supervisors, 45 N. Y. 676; National Bank v. Elmyra, 53 N. Y. 49; Bruecher v. Fort-chester, 101 N. Y. 240; Hicks v. Westport, 130 Mass. 478. Absolute equality and uniformity in assessments for taxation are seldom, if ever, attainable. The fallibility of the human judgment and the uncertainty attending all human evidence, precludes the possibility of this attainment. Intelligent men differ as to the value of property; therefore, the most that can be expected from wise legislation is an approximation to the desired end. It is true that where overvaluation of property has arisen from the adoption of an arbitrary rule of appraisement, which conflicts with the constitutional and statutory direction, and operates unequally not alone on a single individual, but on a large class of individuals or corporations, the party aggrieved may resort to a court of equity to restrain the exaction of the excess upon payment or tender of what is admitted to be due. Cummings v. National Bank, 101 U. S. 153. There must be a systematic, intentional and unlawful under-valuation or over-valuation for taxation, which necessarily effects an unjust discrimination against a certain species of property. It was so held in the cases of Taylor v. Railroad, 60 U. S. App. 170, and Stanley v. Supervisor, 121 U. S. 535, both of which cases are referred to by counsel for the company in their brief. (4) The valuations fixed upon the property of the Western Union Telegraph Company can not now be questioned. If fraud exists, or if the officers have intentionally violated the law, which, of course, constitutes fraud, the assessments will be set aside, but under the evidence and the pleadings of this case, the valuation should stand as fixed by the board. Hamilton v. Rosenblat, 8 Mo. App. 237. Proof of fraud or misconduct, and not merely an error of

judgment on the part of the assessing board, is necessary to warrant setting aside an assessment. Railroad v. Board of Public Works, 172 U. S. 32; Maish v. Arizona, 164 U. S. 600; Bank v. Perea, 147 U. S. 87; Weeks v. Milwaukee, 10 Wis. 242; Railroad v. City, 38 N. Y. 154; Smith v. Smith, 19 Wis. 615; Ledoux v. Lebree, 83 Fed. Rep. 761; McCloud v. Receiver, 71 Fed. Rep. 451.

*H. M. Meriwether* for Collector, plaintiff-appellant.

(1) The franchises, in the sense of intangible property, as well as the poles and wires of the defendant, are taxable by the several States, and such franchise taxes have been sustained in all recent cases by the Supreme Court of the United States against this defendant, and others similarly situated. West. U. Tel. Co. v. Massachusetts, 125 U. S. 530; Massachusetts v. West. U. Tel. Co., 141 U. S. 40; Railroad v. California, 162 U. S. 91; West. U. Tel. Co. v. Norma, 77 Fed. Rep. 13; West. U. Tel. Co. v. Taggart, 162 U. S. 1; 25 Am. and Eng. Ency. of Law, 873; Adams Express Co. v. Ohio, 166 U. S. 220; Commonwealth v. West. U. Tel. Co., 2 Dauph. (Pa.) 40; Michigan Tel. Co. v. City of Charlotte, 93 Fed. Rep. 11; Keokuk & H. Bridge Co. v. Kentucky, 175 U. S. 626; Henderson Bridge Co. v. Kentucky, 166 U. S. 154; Louisville Tobacco Warehouse Co. v. Commonwealth, 49 S. W. 1069; Commonwealth v. Manor Gas Co., 188 Pa. St. 195; Wier v. Norman, 166 U. S. 171. (2) The assessment made by the State board was an assessment of the property of defendant, and did not include, or in any way affect, the right to exist and transact its business in Missouri or elsewhere. The tax is strictly a property-tax, and having been fairly and legally assessed upon a reasonable valuation of the property of defendant, should be sustained. National Bank v. Commonwealth, 9 Wall. 353; Railroad v. Pemiston, 18 Wall. 30; Electric Light Co. v. Judson (Wash.), 56 Pac.

Rep. 829; Railroad v. Commonwealth, 49 S. W. 486; Railroad v. McCracken, 49 S. W. 178; National Bank v. City of Owensboro, 173 U. S. 664; Commonwealth v. Manor Gas Co., 2 Dauph. (Pa.) 128; People of New York v. Roberts, 19 Sup. Ct. Rep. 58. (3) There is a clear distinction between a license tax and a property-tax. The former involves a charge for permission or authority to transact certain business, while the latter is a contribution imposed upon, and measured by the property of an individual or corporation. This State can not impose a license, impost, or embargo on defendant, even though it be called a tax. But it can take from the property owned by defendant within the jurisdiction of the State, a sufficient amount to pay its just proportion of its governmental expenses. Nothing else having been attempted, the tax should be sustained. Cooley on Taxation (2 Ed.), p. 383, p. 576; Burroughs on Taxation, sec. 77, p. 146, sec. 85, p. 169; Judson on Taxation, p. 130; Welton v. Missouri, 91 U. S. 275; State v. Emert, 103 Mo. 241; Emert v. Missouri, 156 U. S. 296. (4) The action of the State board in valuing and assessing the property of the defendant is not subject to review or attack in this proceeding. Cooley on Taxation (2 Ed.), p. 748; Burroughs on Taxation, p. 238; Hamilton v. Rosenblat, 8 Mo. App. 237; Railroad v. Adams, 25 So. Rep. 355; Home Ins. Co. v. Lynch, 56 Pac. Rep. 681; Danforth v. Livingston, 23 Mont. 558; City of Elizabeth v. New Jersey Jockey Club, 44 N. J. App. 207; Dayton v. Multnomah, 55 Pac. Rep. 23; Ledoux v. Le Bee, 83 Fed. Rep. 761; McLeod v. Receiver, 71 Fed. Rep. 455, 18 C. C. A. 188; Railroad v. City, 38 N. Y. S. 154; State ex rel. v. Springer, 134 Mo. 212.

*Dickson & Smith,* and *Karnes, New, Hall & Krauthoff* for defendant-appellant.

(1) The Western Union Telegraph Company is an agent of the Government and an instrument of interstate com-

merce; and its franchises exercised in Missouri, having been derived solely from the Federal Government, are exempt from taxation by the taxing authorities of the State.    Pensacola Tel. Co. v. West. U. Tel. Co., 96 U. S. 1; Telegraph Co. v. Texas, 105 U. S. 40; California v. Railroad, 127 U. S. 1; San Francisco v. West. U. Tel. Co., 96 Cal. 140; Railroad v. California, 162 U. S. 91; Railroad v. Illinois, 118 U. S. 557; Railroad v. Peniston, 18 Wall. 5; Laloup v. Port of Mobile, 127 U. S. 640; Robbins v. Taxing Dist., 120 U. S. 493; Phil. S. S. Co. v. Pa., 122 U. S. 344; West. U. Tel. Co. v. Pendleton, 122 U. S. 358.    (2)    The State Board of Equalization has for years past intentionally and systematically equalized and adjusted the values of real and personal property of private persons for purposes of taxation at forty per cent of the actual values of such property.    And having fixed the valuation of the property of the Western Union Telegraph Company for taxation at more than its full and actual value, said company has been thereby discriminated against in violation of the fourteenth amendment to the Constitution of the United States, section 4, article 10 of the Constitution of Missouri, and section 9387, Revised Statutes 1899.    Cummings v. Nat. Bk., 101 U. S. 153; Taylor v. Railroad, 60 U. S. App. 166, 88 Fed. Rep. 350; Railroad v. Board of Equalizers, 85 Fed. 302; Nat. Bank v. Kimball, 103 U. S. 732; Pelton v. National Bank, 101 U. S. 143; Railroad v. Taylor, 86 Fed. Rep. 168; Dundee Trust Co. v. Parrish, 24 Fed. Rep. 197; Balfour v. Portland, 28 Fed. Rep. 736; Railroad v. Guenther, 19 Fed. Rep. 395; Railroad v. Bd. Commrs. Republic Co., 67 Fed. Rep. 411; Stanley v. Supervisors of Albany, 121 U. S. 535; Railroad v. Commrs. Atchison Co., 54 Kan. 781; Board Supervisors v. Railroad, 44 Ill. 229; Ex parte Ft. Smith v. Van Buren Bridge Co., 62 Ark. 461; Randall v. Bridgeport, 63 Conn. 321; Cocheco Co. v. Stafford, 51 N. H. 455; Pacific Postal Cable Co. v. Dalton, 119 Cal. 604; Walsh v. King, 41 N. W. 1080; Merrill v. Humphrey, 24 Mich. 170;

Iron Co. v. Hubbard, 29 Wis. 52; Lepperts v. Supervisors, 21 Wis. 688; Hersey v. Supervisors, 16 Wis. 185; Cooley on Taxation (2 Ed.), p. 785; Welty on Assessments, sec. 137; State ex rel. v. Wayne County Court, 98 Mo. 362; State ex rel. v. Seahorn, 139 Mo. 582; State ex rel. v. Fullerton, 143 Mo. 682. (3) The powers of boards of equalization are quasi judicial and their findings can not be impeached for mere mistake of judgment. But where discrimination of the character mentioned under point 2 exists, it amounts to fraud in law and the courts will grant relief. Likewise, where lack of jurisdiction is shown. State ex rel. v. Vaile, 122 Mo. 33; State ex rel. v. Railroad, 121 Mo. 12; Black v. McGonigle, 103 Mo. 192; State ex rel. v. Cunningham, 153 Mo. 642. (4) In all cases where franchises, such as those possessed by the Western Union Telegraph Company, have been considered in estimating the value of property assessed and such assessments have been sustained, statutes providing for the assessment have contained the most minute provisions for correctly ascertaining the valuation of the property to be assessed. No such provisions are found in the laws of Missouri. The "ways and means" have not been prescribed. West. U. Tel. Co. v. Mass., 125 U. S. 530; Mass. v. West. U. Tel. Co., 141 U. S. 40; W. U. Tel. Co. v. Taggart, 163 U. S. 1; State Railroad Tax Cases, 92 U. S. 575; Pullman Co. v. Penn., 141 U. S. 18; Adams Ex. Co. v. Ohio, 165 U. S. 194, 166 U. S. 185; Bridge Co. v. Kentucky, 166 U. S. 150; St. Louis v. Wennecker, 145 Mo. 238.

MARSHALL, J.—This is an action at law by the collector of Jackson county to recover $1,027.22 back-taxes for the year 1899.

The answer contains two defenses: First, that the State Board of Equalization intentionally discriminated against defendant in assessing its property at its full value, while other property in the State is only assessed at from thir-

ty-five to forty per cent of its value; and, second, that the assessment as to the item "all other property, $856,400.56," is an assessment on its franchise, and that the only franchise it exercises in this State is derived from an act of Congress approved July 14, 1866 (U. S. Stats. at Large, 1865-7, pp. 221-22), which constitutes defendant a governmental agency, and an instrument of foreign and interstate commerce, and that under the Constitution and laws of the United States the board of equalization was without authority to impose that item of taxes.

The record discloses the facts to be that the State Board of Equalization, whose duty it is under the law (sec. 9387, R. S. 1899) to assess all property, real and personal, "including franchises," of telegraph companies, made the following assessment of defendant's property on the twenty-fifth of July, 1899:

"State of Missouri, office of State Auditor.

"Be it remembered that heretofore, to-wit, on the twenty-fifth day of July, 1899, the following among other proceedings were had by the State Board of Equalization, viz.:

"The State Board of Equalization having given to the Western Union Telegraph Company opportunity to be heard personally by the board, and having heard the said company through its officers and agents, and having carefully considered the facts set out in the returns and the statements of said company, and all evidences of value, and all matters bearing upon the question of the value of the property of said company, and considering the cost of construction and equipment of said Western Union Telegraph Company, and the location thereof, and its traffic and business, and the market and par value of its stocks and bonds, and the gross receipts and net earnings and franchise owned by said company, and the value thereof, and having received evidence concerning the value of the cost of construction of said telegraph line, and the market value and par value of the stocks and bonds, and of the gross re-

ccipts and net earning power, and the franchise and the value thereof, and having heard evidence upon and considering all other matters ascertainable by said board bearing upon the question of the value of said company, which, in the opinion of the board, would assist in its findings, conclusions and judgment in arriving at the actual cash value of the property of said telegraph company; on motion the State Board of Equalization assesses and values for taxes of 1899 the property of said Western Union Telegraph Company at $1,827,-727.45; and it is further ordered by the State Board of Equalization that the assessed value thereof be distributed upon the said classes of property as follows:

| | |
|---|---:|
| 6,075.98 miles of poles at $71.50 per mile..$ | 434,432.57 |
| 23,767.34 miles of wire at $22.02 per mile. | 523,356.82 |
| 2,375 instruments at $5.70 each.......... | 13,557.50 |
| All other property at ................ | 856,400.56 |

Total ........................$1,827,727.45."

Subject to the right of objection on any sufficient ground in law, it was stipulated between counsel, "That the taxbook should be prima facie evidence of the validity of the taxes thereon assessed for the year 1899, against defendant, without proof by plaintiff or any of the steps leading up to its execution and issuance; and that said taxbook was properly certified."

It was also admitted: First, that defendant, since 1854, has been a corporation, organized and existing under the laws of the State of New York; second, that as pleaded in the answer, it accepted the provisions of the act of Congress of July 24, 1866, and that said acceptance has not been withdrawn, and that defendant transmits telegrams for the Government between its departments and officers at rates fixed by the Postmaster-General; third, that defendant is not incorporated under the laws of the State of Missouri, and has never applied for or secured from the State a license authorizing it

to do business within the State under the laws thereof.

Objection was made by plaintiff to the introduction of the admissions second and third, but such objection was overruled and exception taken.

A general objection was also made by plaintiff to the introduction of any evidence by defendant for the reason that the finding and assessment of the State Board of Equalization was final and not subject to attack in this suit. This objection was overruled and an exception noted.

It was shown on the part of the defendant, by the testimony of A. A. Lesueur, Secretary of State, and as such a member of the State Board of Equalization, that the property, outside of St. Louis, is assessed by the local assessors at what he believes to be about thirty-five to forty per cent of its full value, and in St. Louis at about fifty per cent thereof, although the city assessor and city board of equalization thought it was seventy per cent thereof.

It was also shown by the testimony of Edward C. Crow, Attorney-General, and as such a member of the State Board of Equalization, that the item of assessment, "All other property at $856,400.36," was intended to include all the taxable property of the defendant other than that specifically mentioned in the three other items, and also its intangible property, including franchises, but as to how much the franchise value or intangible property was valued at and how much the tangible property other than that specifically enumerated included under the head of "all other property" was valued at, he "could not say."

The Attorney-General then further testified:

"Q. What do you understand by the meaning of the word 'franchise,' as used by you in your direct examination? A. Well, the same sense in which I use it might not be agreed to by lawyers or laymen, without qualification, but I used it in the same sense of representing the class of property owned

by the Western Union Telegraph Company and controlled by it, such as privileges and rights to erect and maintain their poles and wires, to carry on their traffic in the different portions of the State of Missouri in connection with their rights to so erect their poles and wires, and carry on their traffic wherever else their lines extend in this country and other countries, representing a unity of use in the entire corporate property, making the same thereby much more valuable than it otherwise would be for use separately and independently in each territory or country.

"Q.   And therefore the privilege to be or to exist does not enter into your idea at all in the matter of values as you have explained by way of franchise ?   A.   Oh, no, as I understand it the Western Union corporation acquires their right to exist as a corporation from an act of the Federal Congress; they have this, however, which I did not consider, and that is the right to use the posts of the Federal Government.   I did not consider that as an element in fixing the franchise value of property in the use of my term of the word 'franchise,' although it might properly be considered, as the courts have held in a Massachusetts case, but I did not have that in mind when I used the word 'franchise.' "

It was further shown by the testimony of Theodore P. Cook, superintendent of the defendant, that all the property owned by the defendant on June 1, 1898, in Missouri, outside of St. Louis, Kansas City and St. Joseph, other than that specifically enumerated, would not exceed $1,000, and that it has paid the taxes on the property located in the three cities and subject to local assessment there.   Mr. Cook further testified that the defendant's whole system and plant in Missouri could be replaced absolutely new for $984,357.89, and that its present system or plant was not worth over thirty-five per cent of that amount.   He further said that he had made a return to the State Board of Equalization showing that defend-

ant owned property in Missouri subject to taxation on June 1, 1898, of the value of $541,472.40.

The trial court found and decided that the term "all other property" embraced franchises derived from the Federal Government, which were non-taxable by reason of such derivation, and that the defendant is a governmental agent and instrument of interstate commerce, exercising its rights in Missouri solely by virtue of such Federal authority, and so held that the tax based upon the assessment of "all other property at $856,400.56," was void, but, "that the assessment and valuation made by the State Board of Equalization upon the poles, wires and instruments, owned by the defendant in this State, is final and conclusive, and is not subject to review or attack in this suit."

Both parties appealed.

## I.

The defendant contends that it has been discriminated against, contrary to the provisions of section 4 of article 10 of the Constitution of Missouri, and of the fourteenth amendment to the Constitution of the United States: in this, that the Constitution of Missouri relied on, provides that, "all property subject to taxation shall be taxed in proportion to its value," and the fourteenth amendment to the Constitution of the United States prohibits any State to deny any person within its jurisdiction the equal protection of the laws, and that the State Board of Equalization has assessed defendant's property at its full value, while the local assessors throughout the State have only assessed the property of other persons at from thirty-five to forty per cent of its value.

In support of its contention the defendant cites a great number of cases, among them, Cummings v. National Bank, 101 U. S. 153; Railroad v. Taylor, 86 Fed. 168; National Bank v. Kimball, 103 U. S. 732; Pelton v. National Bank, 101 U. S. 143; Balfour v. City of Portland, 28 Fed. 738;

Trustees of Cincinnati So. Railroad v. Guenther, 19 Fed. 395; Railroad v. Board, etc., 67 Fed. 411; Railroad v. Board, 54 Kansas, 781; Stanley v. Supervisors, 121 U. S. 535.

The principle here contended for is tersely expressed by Mr. Justice MILLER in the case of National Bank v. Kimball, 103 U. S. 732, as follows: "It is held in these opinions that when the inequality of valuation is the result of a statute of the State designed to discriminate injuriously against any class of persons or any species of property, a court of equity will give appropriate relief; and also where, though the law itself is unobjectionable, the officers who are appointed to make assessments combine together and establish a rule or principle of valuation, the necessary result of which is to tax one species of property higher than others, and higher than the average rate, the court will also give relief. But the bill before us alleges no such agreement or common action of assessors, and no general rule or discriminating rate adopted by a single assessor, but relies on numerous instances of partial and unequal valuations which establish no rule on the subject."

The defendant has not brought itself within the rule announced in those cases, for it has shown no combination among assessors and no course of conduct among them to discriminate against the defendant or other telegraph companies and other property owned by citizens generally. It has only shown by the testimony of one member of the State Board of Equalization that in his judgment the valuation put upon property generally is only thirty-five or forty per cent of its true value. The law contemplates that for purposes of taxation property shall be assessed at its true value in money (R. S. 1899, sec. 9180), and it also presumes that all officers do their duty. [Agan v. Shannon, 103 Mo. 661; State ex rel. v. Bank, 120 Mo. 161; Mathias v. O'Neill, 94 Mo. 520.] The evidence adduced is not sufficient to overthrow this presumption, nor to establish a combination or unlawful course of conduct. It is only enough to show what the witness believed to be the

value of the property, but not enough to convict the local assessors of intentional or systematic violation of duty.

But aside from this the cases relied on also establish another rule, which is voiced by Mr. Justice FIELD, in Stanley v. Supervisors, 121 U. S. 535, that when the statutes of a State provide a board for the correction of errors and irregularities of assessors in the assessment of property for the purpose of taxation, the official action of that body is judicial in character and its judgments are not open to attacks collaterally, but, "When the overvaluation of property has arisen from the adoption of a rule of appraisement which conflicts with a constitutional or statutory direction, and operates unequally not merely on a single individual but on a large class of individuals or corporations, *a party aggrieved may resort to a court of equity to restrain the exaction of the excess, upon payment or tender of what is admitted to be due."* To the same effect are Cummings v. National Bank, 101 U. S. 153; Balfour v. City of Portland, 28 Fed. 738; Pelton v. National Bank, 101 U. S. 143; Trustees of Railroad v. Guenther, 19 Fed. 395; Railroad v. Board, 67 Fed. 411.

The defendant can not avail itself of these cases, for the reasons, first, that it seeks to raise the question of discrimination by a defense to an action at law to collect the taxes, and thereby collaterally attacks the judgment of the board of equalization; second, that such questions can only be raised by a direct attack, in equity, and then only upon the condition precedent that it pays or tenders the amount justly due and only asks to have the collection of the excess restrained. This the defendant has not done in this case. It simply alleges a discrimination or excessive tax, and then seeks to defeat the whole assessment without paying or tendering anything, notwithstanding it admits by its answer and its proofs that it has property in this State subject to taxation of the value of $541,-472.40. Upon the authority of the cases relied on by it, this can not be done. It results that defendant's appeal is with-

out merit, and the judgment of the circuit court upon this branch of the case is right and must be affirmed as to defendant's appeal.

## II.

The trial court held that the item "all other property at $856,400.56," included franchises which were derived from the Federal Government and were non-taxable by reason of such derivation, and that the defendant is a governmental agent and an instrument of interstate commerce exercising its right in Missouri solely by virtue of such Federal authority, and hence held that portion of the tax sought to be recovered which was based upon this item could not be legally charged on defendant. From this the plaintiff appealed.

The defendant is a corporation organized under the laws of the State of New York. It has never received any authority or right or permission from the State of Missouri to do business in this State or to erect its poles or string its wires on, over or upon the public highways and places in this State. Ever since 1865 (R. S. 1865, ch. 65, p. 349, sec. 5) there has been a statute in this State authorizing any telegraph company *organized under the laws of this State,* to place its poles and wires along, over and upon the public highways. But there is not now and never has been any law of this State granting any such franchise or permission to any foreign telegraph company. The defendant's sole right to do business in Missouri arises out of the act of Congress approved July 14, 1866. [U. S. Stats. at Large, 1865-67, pp. 221-22.]

Briefly stated, that act gives the defendant the right to maintain its system of telegraph along the military and post roads of the United States, and over, under, and across all navigable streams of the United States, and requires the defendant to transmit and give priority to messages of the Government between its various departments, officers and agents,

at rates to be annually fixed by the Postmaster-General, and further requires the defendant to sell its entire system to the Government at any time upon a valuation to be fixed by appraisers. The defendant accepted the provisions of this act and has ever since been operating under it.

But while this act has been held to be a legitimate regulation of commerce between the States and to constitute the defendant, *as to Government business a Government agency,* and an instrument of interstate commerce (Pensacola Tel. Co. v. Western Union Tel. Co., 96 U. S. 1; Telegraph Co. v. Texas, 105 U. S. 460); nevertheless, it is equally as well established that: "The property of a telegraph company within a State is subject to State taxation like all other property. The fact that the company is engaged in interstate commerce, or that it is an agent of the Government, can afford no immunity from the taxation of its property." [25 Am. and Eng. Ency. of Law (1 Ed.), p. 873, and cases cited; Telegraph Co. v. Texas, 105 U. S. 464; Western Union Tel. Co. v. Taggart, 163 U. S. 1; Western Union Tel. Co. v. Mass., 125 U. S. 530, and 141 U. S. 40.]

The plaintiff relies, principally, upon the cases of Western Union Telegraph Co. v. Massachusetts, 125 U. S. 530, and the same v. same, 141 U. S. 40. The syllabi in those cases express clearly the points decided. In the first case (125 U. S. 530) the syllabus is as follows:

"The privilege conferred upon telegraph companies by Revised Statutes, section 5263, carries with it no exemption from the ordinary burdens of taxation in a State within which they may own or operate lines of telegraph.

"The laws of Massachusetts impose a tax upon the Western Union Telegraph Company on account of the property owned and used by it within that State, the value of which is to be ascertained by comparing the length of its lines in that State with the length of its entire lines; and such a tax is essentially an excise tax, and is not forbidden by the fact

of the acceptance on the part of the company of the rights conferred on telegraph companies by Revised Statutes, section 5263, nor by the commerce clause of the Constitution.

"The principles established by the statutes of Massachusetts for regulating the taxation of corporations doing business within its limits, whether domestic or foreign, do not appear to be unfair or unjust.

"A State statute which authorizes an injunction to be issued to restrain a corporation organized under the laws of another State, whose taxes are in arrear, from prosecuting its business within the State until the taxes are paid, is void so far as it assumes to confer power upon a court to so restrain a telegraph company which has accepted the provisions of Revised Statutes, section 5263, from operating its lines over military and post roads of the United States."

In the second case (141 U. S. 40) the syllabus is as follows:

"The tax imposed by the statutes of Massachusetts (Pub. Stat., c. 13, secs. 40, 42) requiring every telegraph company owning a line of telegraph within the State to pay to the State Treasurer 'a tax upon its corporate franchise at a valuation thereof equal to the aggregate value of the shares in its capital stock,' deducting such portion of that valuation as is proportional to the length of its lines without the State, and deducting also an amount equal to the value of its real estate and machinery subject to local taxation within the State, is in effect a tax upon the corporation on account of property owned and used by it within the State; and is constitutional and valid, as applied to a telegraph company incorporated by another State, and which has accepted the rights conferred by Congress by section 5263 of the Revised Statutes."

It will thus be observed that in the first case it was held proper to tax the tangible property of the company in that State, and that "the value of which is to be ascertained by comparing the length of its lines in that State with the length

of its entire lines." And in the second case it was held proper
to require the company to pay "a tax upon its corporate fran-
chise at a valuation thereof equal to the aggregate value of
the shares in its capital stock," "deducting such portion of that
valuation as is proportional to the length of its lines without
the State, and deducting also an amount equal to the value of
its real estate and machinery subject to local taxation within
the State." This method of taxation was expressly authorized
by the statute of that State.

It was argued in the last case cited that such a tax was
a tax upon its right or franchise derived from the act of Con-
gress and hence was a tax on its franchise and not on its prop-
erty. But the Supreme Court of the United States held that
such a method of taxation was not a tax on its franchise, but
was only a method to ascertain the value of the tangible prop-
erty located in the State of Massachusetts.

Mr. Justice GRAY, delivering the opinion of the court,
said:

"But this court, in answering that argument and uphold-
ing the validity of the tax, affirmed the following propositions:

"The franchise of the company to be a corporation, and
to carry on the business of telegraphing, was derived not from
the act of Congress, but from the laws of the State of New
York, under which it was organized; and it never could have
been intended by the Congress of the United States, in con-
ferring upon a corporation of one State the authority to enter
the territory of any other State, and to erect its poles and lines
therein, to establish the proposition that such a company owed
no obedience to the laws of the State into which it thus en-
tered, and was under no obligation to pay its fair proportion
of the taxes necessary to the support of the government of that
State. [125 U. S. 547, 548.]

"By whatever name the tax may be called, as described
in the laws of Massachusetts, it is essentially an excise upon
the capital of the corporation; and those laws attempt to ascer-

tain the just amount which any corporation engaged in business within its limits shall pay as a contribution to the support of its government upon the amount and value of the capital so employed by it therein. [125 U. S. 547.]

"The tax, though nominally upon the shares of the capital stock of the company, is in effect a tax upon that organization on account of property owned and used by it in the State of Massachusetts; and the proportion of the length of its lines in that State to their entire length throughout the whole country is made the basis for ascertaining the value of that property. Such a tax is not forbidden by the acceptance on the part of the telegraph company of the rights conferred by section 5263 of the Revised Statutes, or by the commerce clause of the Constitution. [125 U. S. 552.]

"The statute of Massachusetts is intended to govern the taxation of all corporations doing business within its territory, whether organized under its own laws or under those of some other State; and the rule adopted to ascertain the amount of the value of the capital engaged in that business within its boundaries, on which the tax should be assessed, is not an unfair or unjust one; and the details of the method by which this was determined have not exceeded the fair range of legislative discretion. [125 U. S. 553.]

"That decision was cited by the court in Ratterman v. Western Union Telegraph Co., 127 U. S. 411, 426, 427, and in Leloup v. Mobile, 127 U. S. 640, 649."

The rules established by the adjudications may be stated to be: First, that the Western Union Telegraph Company is, as between governmental departments, a governmental agency, but is not so as between the company and a State or a citizen; second, that the telegraph company is an instrument of interstate commerce, and has a right to enter a State and transact business; third, that the telegraph company being an instrument of interstate commerce and deriving its powers in this regard from the United States, no State has a right to pre-

vent such company from doing business in the State, for that would be an interference with interstate commerce; fourth, that the tangible property of the telegraph company located in a State is subject to taxation like any other property in that State, and its franchise or right derived from the Act of 1866 does not exempt such property from taxation by the State in which such property is located; fifth, that in determining the value of the tangible property of the company located in any State, it is proper to compare the length of its lines in that State with the length of its entire lines, or to take the aggregate value of the shares of its capital stock, and deduct therefrom such portion of that valuation as is proportional to the length of its lines without the State, and also to deduct therefrom the value of its real estate and machinery subject to local taxation within the State. And that such taxes, so assessed, constitute an excise tax upon the property or capital of the corporation and not a tax upon any franchise of the corporation.

In the case at bar the board of equalization first ascertained the number of miles of poles and wires and the number of instruments owned by the defendant, and used in this State, and placed a valuation upon them. The board then considered "all other property" owned by the defendant located in this State and put a valuation upon that. The defendant's evidence shows that it did own other property in this State besides the poles, wire and instruments specially enumerated and valued. But it contends that such other property was worth only one thousand dollars and not $856,400.56, as the board found it to be worth. The utmost that could therefore be said of this item is that the defendant and the board differed in opinion as to the value of such other property, and this being an action at law wherein the defendant attempts to defeat the whole levy, as long as it appears that the defendant owned *some* property and the only question is whether it was of the one value or the other, the defense must fail, for a court of law has no machinery for determining how much such prop-

erty was really worth; and in addition, if all defendant claims be true, it is merely a case of overvaluation and not an erroneous assessment, and under the law of this State mere overvaluation is no defense to a suit upon a taxbill, for section 7579, Revised Statutes 1889, (sec. 9197, R. S. 1899) expressly provides that: "Valuations placed on property by the assessor or board of equalization shall not be deemed to be erroneous assessments under this section."

But aside from this, such a defense is not available to the defendant in a suit upon the taxbill in a court of law, but "a party aggrieved may resort to a court of equity to restrain the exaction of the excess, upon the payment or tender of what is admitted to be due." [Stanley v. Supervisors, 121 U. S. 535.] This the defendant has wholly failed to do. It admits it owns some property that is subject to taxation other than that specifically enumerated, and it has not sought the aid of a court of equity to relieve it against the claimed excessive tax, nor has it paid or offered to pay the tax upon the other property it admits it owes, even upon its own basis of valuation thereof. So that even if this was an appropriate proceeding in equity, the defendant has not brought itself within the rule entitling it to relief as laid down by the Supreme Court of the United States.

The defendant, however, contends, and the trial court found, that "all other property at $856,400.56," included franchises which were derived from the Federal Government and were non-taxable by reason of such derivation, and that the defendant is a governmental agent and an instrument of interstate commerce, exercising its rights in Missouri solely by virtue of such Federal authority, and hence that court held that the portion of the tax based upon this item of assessment could not be recovered.

The trial court was right in holding that the defendant is a governmental agent, but this only extended to its relations between the Government and its agent. The trial court was

also right in holding that the defendant is an instrument of interstate commerce. But the trial court was in error in holding that the defendant derived its franchise—that is, its right to exist and be a corporation and to do a telegraph business—from the Government of the United States. That franchise is derived from the State of New York, and not from the Government of the United States. Neither the act of Congress of 1864, nor its acceptance by the defendant, created the defendant or gave it the right to do business. The defendant was created by the laws of New York twelve years before the Federal statute was enacted. The defendant was obliged to be a telegraph company or engaged in that business before it could accept the provisions of that act. It could not be created a telegraph corporation by the Government of the United States, or at any rate it had not been so created. The fact that it is an instrument of interstate commerce or that it had accepted the Act of 1864, did not exempt its property in this State from taxation. [25 Am. and Eng. Ency. Law (1 Ed.), p. 873; Telegraph Co. v. Texas, 105 U. S. 464; Western Union Tel. Co. v. Taggart, 163 U. S. 1; Western Union Tel. Co. v. Mass., 125 U. S. 530; Ibid v. Ibid, 141 U. S. 40.]

So that, when, in determining the value of the property of the defendant in this State, the board of equalization took into consideration "the cost of construction and equipment of said Western Union Telegraph Company, and the location thereof, and its traffic and business, and the par value of its stock and bonds, and the gross receipts and net earnings and franchises owned by said company, and the value thereof," it did not and could not have included therein any franchise derived by the defendant from the Government of the United States, because that Government had conferred no such franchise; nor was such a valuation placed upon "all other property," a tax upon the franchise of the defendant company. The franchise derived by the defendant from the State of New York was considered by the board in determining the value of the property of the

defendant located in this State. That is, that property was valued, not as so many poles, so much wire, so many instruments or so much "other property" in the abstract, but was valued in the concrete, in the relation that such property in the abstract bore to other property in the abstract, which being brought into relation towards each other—into a *system,* located partly in this State and partly in other States—gave each part a concrete value, which was much greater than its abstract value. The right to exist—the franchise—of the defendant was property, and was subject to taxation, either directly, in the proportion that the portion of the franchise exercised in this State bore to the proportion of the franchise exercised in all other States, or indirectly, as was done in Massachusetts and as was done here, by being impressed upon the tangible property owned by it, thereby increasing its value, and by considering the franchise and its tangible property as a system, and then assessing the part of the property forming a part of the system and located in Missouri as of its proportionate value of the whole property constituting the system. This was expressly held to be proper in Western Union Tel. Co. v. Mass., 125 U. S. 530. The rule approved in Western Union Tel. Co. v. Mass., 141 U. S. 40, accomplishes the same result, for it is "a tax upon its corporate franchise at a valuation thereof equal to the aggregate value of the shares of its capital stock," deducting such proportion of that valuation as is proportional to the length of its lines without the State, and deducting also an amount equal to the value of its real estate and machinery subject to local taxation within the State. This is only another method of adding the value of the franchise to the value of the property located in the State, and thereby taxing its concrete value, which is its real value, and the value at which it could be sold.

It will not do to say, as the defendant does, that the poles, wire and instruments could be replaced new at a cost of $984,357.89, and that all its other property in this State

is only worth $1,000. Those sums may represent the value of the property in the abstract, but they do not represent the value of the property in the concrete, because as a part of a system a greater value is necessarily impressed upon the abstract property, and thereby the property becomes, it may be, worth many times as much as it would be if considered in the abstract. No injustice is done to the defendant in so valuing it, because the defendant so uses it and treats it, and because it is worth more, for it would sell for more as a necessary part of a system than it would if it was sold in the abstract or than if it had no such relation to the other parts of the system. In other words, the defendant values it for taxation at its abstract value, while it enjoys it and derives profit from it according to its concrete value. It follows that the judgment of the circuit court holding the tax assessed against "all other property at $856,400.56" to be unlawful, is erroneous, and that the plaintiff is entitled to a judgment for the whole amount of the tax sued for. Judgment is accordingly entered, here, for the plaintiff, for $1,027.22, back taxes for the year 1899, with interest thereon from the first of January, 1900, at the rate of one per cent per month (R. S. 1899, sec. 9225), and costs. All concur.