ST. LOUIS ELECTRIC BRIDGE COMPANY, Appellant, v. EDMOND
KOELN, Collector of the Revenue.

Division One, July 30, 1926.

1. TAXATION: Assessment: Horizontal Increase: Uniformity.    An assessment of bridge property in the class to which a company's bridge belongs by taking the assessment of the preceding year and applying to it a horizontal raise of seventy-five per cent, does not violate the principle of uniformity, nor does it discriminate against any taxpayer if a similar method is employed generally.

2. ———: ———: Other Like Properties: Different Class. Evidence to the effect that other bridges across the same and other rivers, of equal or greater length and of the same general construction as plaintiff's vehicular and pedestrian bridge, and used as facilities for steam railroads as well as to accommodate vehicular and pedestrian traffic, were assessed at lower values than was plaintiff's bridge, is a mere generalization at best, and affords no basis for a finding that the value placed on plaintiff's bridge was, as compared with the values put upon other bridges of the same class, unduly high. Besides such finding if made would be no ground for equitable relief.

3. ———: ———: Function of Court. It is not the province of the court to weigh the evidence showing the value of properties for purposes of taxation; the court can set aside the assessment made by the proper authorities only when it is found to be fraudulent.

4. ———: ———: Equivalent to Judgment: Fraud: Grossly Excessive. Assessment of bridge property by the State Board of Equalization is in effect a judgment, and as is the case with other judgments the only fraud that will justify its setting aside is fraud which entered into its very concoction; and such fraud is not established by the mere showing of an overvaluation which might have resulted from mistake or error of judgment.

5. ———: ———: Presumption. In the absence of a showing to the contrary it must be presumed that the assessment commission made an investigation and thereby obtained sufficient data upon which to base the assessed valuation of the properties. Besides, in this suit to cancel and set aside the assessment on the ground that it was excessive, the evidence abundantly shows that facts existed which warranted the valuation placed upon the properties.

<hr />

Corpus Juris-Cyc. References: **Constitutional Law**, 12 C. J., Section 881, p. 1151, n. 58; Section 882, p. 1153, n. 8. **Taxation**, 37 Cyc., p. 746, n. 77; p. 1082, n. 12; p. 1108, n. 62; p. 1110, n. 67, 70; p. 1118, n. 8; p. 1133, n. 12; p. 1137, n. 46.

Appeal from Circuit Court of City of St. Louis—*Hon. Frank Landwehr*, Judge.

AFFIRMED.

*Burton & Hamilton* and *Carter, Nortoni & Jones* ⟨ r appellant.

(1) The right of the plaintiff to maintain a bill in equity to enjoin the collection of taxes alleged to be excessive and so illegal as to amount to fraud in law is well established in Missouri and follows the rule in many other jurisdictions, including the Federal courts. Overall v. Ruenzi, 67 Mo. 203; Black v. McGonigle, 103 Mo. 192; St. Louis, I. M. & S. Railroad Co. v. Anthony, 73 Mo. 431; Arnold v. Hawkins, 95 Mo. 569; K. C., Ft. Scott & M. Ry. Co. v. Chapin, 162 Mo. 409; St. Louis & San Francisco Railroad Co. v. Epperson, 97 Mo. 300; State ex rel. v. W. U. Tel. Co., 165 Mo. 502, affirmed in 190 U. S. 412; Johnson v. Wells-Fargo & Co., 239 U. S. 234; Stanley v. Supervisors of Albany, 121 U. S. 535; Green v. Railroad Co., 244 U. S. 499; Nevada-California Power Co. v. Hamilton, 235 Fed. 342; Raymond v. Chicago Union Tr. Co., 207 U. S. 20; 37 Cyc. 1263, 1267, 1269. (2) A party feeling himself aggrieved cannot, when sued in an action at law to collect the amount of taxes, collaterally attack the judgment of the Board of Equalization or other taxing body; his endeavors must be reached by direct attack, in equity, and then only upon the condition precedent that he pays or tenders the amount justly due and only asks to have the collection of the excess restrained. State ex rel. v. W. U. Tel. Co., 165 Mo. 502; State ex rel. Johnson v. Bank, 279 Mo. 228. (3) The law contemplates that for purposes of taxation, property shall be assessed at is true value in money. Mo. Constitution, art. 10, sec. 74; Secs. 12802, 12955, R. S. 1919; State ex rel. v. W. U. Tel. Co., 165 Mo. 5٠٩. (4) When part of a bridge is in Missouri and part in another state, *such part as is in Missouri only* shall be subject to assessment and taxation in Missouri. Sec. 13058, R. S. 1919. (5) The excessive valuation for tax purposes of the property of appellant in Missouri by the Tax Commission and Board of Equalization deprives appellant of its property without due process of law in violation of Section 1 of the Fourteenth Amendment to the Constitution of the United States and deprives appellant of the equal protection of the laws in violation of said Section 1. Raymond v. Chicago Union Tr. Co., 207 U. S. 20, 52 L. Ed. 78; Green v. L. & I. Ry. Co., 244 U. S. 499, 61 L. Ed. 1280.

*Edw. W. Foristel* and *Frank H. Haskins* for respondent.

(1) A court of equity will not set aside an assessment solely on the ground that it is excessive. State ex rel. Gottlieb v. Western Union, 165 Mo. 517; Taylor v. Secor, 92 U. S. 575; Raymond v. Traction Co., 207 U. S. 38; 3 Cooley on Taxation (4 Ed.) sec. 1144. (2) The action of the State Tax Commission and State Board of Equalization is judicial. It creates something more than a presumption and cannot be overthrown by the testimony of two or three witnesses that the valuation is other than that fixed by the board. Pitts-

burg Ry. v. Backus, 154 U. S. 435; Adams Express Co. v. Ohio, 165 U. S. 229. (3) The State Tax Commission has the exclusive power of original assessment of bridges, subject only to the rights given by the Constitution to the State Board of Equalization. R. S. 1919, sec. 12847, par. 6. (4) Bridges are to be assessed in the same manner as railroad property. R. S. 1919, sec. 13056. (5) In assessing, adjusting and equalizing any railroad property for any year or years the State Board may arrive at its finding, conclusion and judgment upon its knowledge or such information as may be before it and shall not be governed in its findings, conclusions and judgment by the testimony which may be adduced further than to give to it such weight as the board may think it is entitled to. R. S. 1919, sec. 13007. In assessing a bridge, it is not necessary that the assessor employ experts to determine value. Keokuk Bridge Co. v. People, 161 Ill. 514. (6) All property shall be assessed at its real value. R. S. 1919, sec. 12855. (7) The franchise of a bridge is subject to taxation and is to be listed under the designation "all other property." R. S. 1919, secs. 12999, 13000; State ex rel. Hagerman v. Electric Railway, 279 Mo. 616, 256 U. S. 314; State ex rel. Gottlieb v. Western Union, 165 Mo. 502, 190 U. S. 412. (8) Evidence cannot be given of the comparative value of separate pieces of property and the assessment on each. Town of Potosi v. Casey, 27 Mo. 372. (9) An assessment in excess of the real value, however great the excess may be, is not evidence of fraud. Hamilton v. Rosenblatt, 8 Mo. App. 237.

RAGLAND, P. J.—Plaintiff is the owner of a bridge extending across the Mississippi River from Venice, Illinois, to the city of St. Louis, which is used for electric car, vehicular and pedestrian traffic. In 1921 the State Tax Commission and the State Board of Equalization assessed for purposes of taxation that part of the bridge property which is located within this State at the sum of $1,443,750. Plaintiff instituted this action, a suit in equity, to cancel and set aside such assessment and to enjoin the collection of the tax based thereon. As grounds for such relief the petition alleges, in substance, that the value of the plaintiff's property was not determined by the members of the State Tax Commission and the State Board of Equalization through the exercise of judgment, either individual or collective, but that without evidence and without reference to the fair cash value of said property, they arbitrarily assessed it at a sum shockingly in excess of its actual value; and that in making such assessment they employed a higher basis than the one used by them in assessing other bridges of the same class and character. With these as its premises the plaintiff charges: that the assessment is fraudulent in law; that it violates Section 3, Article X, of the

Constitution of Missouri, which requires that taxation shall be uniform on the same class of subjects; and that it deprives plaintiff of its property without due process of law and denies to it the equal protection of the law, both in contravention of the Fourteenth Amendment of the Constitution of the United States.

The 1921 assessment of the portion of the bridge located in Missouri was an increase of seventy-five per cent over that of 1920. Plaintiff contending that the property did not exceed in value $825,000, the sum at which it was assessed in 1920, at the time it instituted this suit paid into court for the use of defendant collector a sum sufficient to cover the 1921 taxes if based on the 1920 valuation.

For many years prior to the making of the assessment in question taxation in this State had been based on what are termed fractional assessments, that is, assessments representing only a portion of the value of the property assessed. In 1921, however, the State Tax Commission and the State Board of Equalization determined that all taxable property in the State should be assessed at its full value conformably to the statutory provision (as they interpreted it) which requires all property to be assessed according to its true value in money. Pursuant to that purpose the assessments of all classes of property were greatly increased over those of preceding years, the assessments of farm lands, for example, being increased to the extent of one hundred and forty per cent. The assessments of the bridges in the class to which plaintiff's belongs were made by taking the 1920 assessments of those properties and applying to them a horizontal raise of seventy-five per cent. This method of increasing the assessments did not violate the principle of uniformity, nor did it discriminate against any taxpayer. If there were any inequalities in the bridge assessments made in 1921, it was because they existed in the assessments of 1920, and with respect to those assessments there was and is no criticism. However, there was some evidence to the effect that other bridges across the Mississippi and Missouri rivers, of equal or greater length and of the same general construction and which were used as facilities for steam railroads as well as to accommodate vehicular and pedestrian traffic, were assessed at lower values in 1921 than that placed upon plaintiff's. But these meager facts, mere generalizations at best, afford no basis for a finding that the value placed upon the bridge in question was as compared with those put on other bridges of the same class unduly high. Such a finding if made, however, would be no ground for equitable relief. [State ex rel. v. Western Union Tel. Co., 165 Mo. 502.]

Plaintiff's bridge is described in the statement and brief of its counsel as follows: ''Including the length of the approaches both in Missouri and Illinois the total length of the bridge structure is

6,269 feet.   There are three 500-foot spans of the main bridge, and the center of the middle or center span is at the middle or center of the thread of the river.   The center of the center span was laid out symmetrical to the harbor lines established by the Government so that the center of this span would come in the center of the main channel of the river as established by the Government.   There is, therefore, 3,896 feet located in the State of Missouri, and 2,373 feet located in the State of Illinois.   Figured on a percentage basis, 62.14 per cent of the total bridge structure is located in Missouri. The above percentage includes the portion of the steel approach located in Missouri.   The piers and substructures are of concrete, the deck spans of steel, and the roadways are timber structures and timbered floor.   There is only one deck to the bridge, and the wagon roadway is separate from the car tracks.   The car tracks are in the center and on the bridge proper the roadways are outside of the trusses.''   The construction of the bridge which was begun in 1906 was completed in 1910.   Subsequently coal bunkers and a passenger station were constructed on the Missouri side and these together with several small parcels of ground which were occupied by the company were included in and assessed as a part of the bridge property.

On the trial of the cause in the circuit court the question of the value of the bridge at the time the assessment was made was approached from several angles.   Plaintiff introduced evidence which tended to show that the original cost of construction of the bridge proper, coal bunkers and passenger station was $1,671,442; that the value of the real estate in Missouri was $27,000 and in Illinois $14,000, and that the bridge structure had depreciated at the rate of two per cent a year or, stated in dollars and cents, to the extent of $434,574.   If these figures be accepted as the proper basis for determining value, the total depreciated value of the entire physical property in 1921 was $1,277,868.   Allocating 62.14 per cent of that amount to the portion in Missouri, its value was $794,067.

Plaintiff also called as a witness Mr. L. E. Fischer, a graduate engineer, who had ''owned and operated, bought and sold, utility properties of a *quasi*-public utility nature'' and who testified: ''I place the true value of this bridge, in money, as being that value the willing buyer is ready to pay to the willing seller, each without ulterior motive and free from duress, as being approximately one million and a quarter dollars.''

Mr. H. C. Henrici, a consulting engineer, at the instance of the State Tax Commission made an appraisement of the bridge to be used as evidence in the trial of this cause.   He testified that the reproduction new value, less depreciation, of the entire bridge property as of January 1, 1921, was $3,407,180.03; and that such value

of the portion in Missouri, estimating the dividing line as the middle of the center span, was $1,984,203.98.

Plaintiff, for some purpose not clearly disclosed, offered in evidence the opinion of the Supreme Court of Illinois in the case of People v. St. Louis Electric Bridge Company, 125 N. E. 280. That suit involved taxes levied against the Illinois portion of the bridge for the year 1916. The evidence in that case showed, according to the opinion, that the original cost of the bridge was $3,580,000; that its reproduction value in 1915 was $2,657,112.94; and that its investment value in 1916 was $3,030,937.

The foregoing is a general outline of all the evidence offered as to the value of the bridge at the time the assessment complained of was made. We have not set the evidence out in detail for review because it is not within our province to weigh it, make a specific finding as to the value and then substitute our judgment for that of the Tax Commission and the Board of Equalization. Our function is limited to the setting aside of the assessment as made if it be found to be fraudulent. [Pittsburg Railway Co. v. Backus, 154 U. S. 421; Adams Express Co. v. Ohio, 165 U. S. 194.]

There is no suggestion that either the State Tax Commission in making the original assessment or the State Board of Equalization in passing upon it in review intentionally over-valued plaintiff's bridge. The contention is that the assessment is so unreasonably and grossly excessive as to be fraudulent as a matter of law. As made by the Tax Commission and approved by the Board of Equalization on review after a slight modification the assessment is in effect a judgment, and as is the case with other judgments the only fraud which will justify its setting aside is fraud which entered into its very concoction. [State ex rel. v. Bank, 279 Mo. 228.] Such fraud will not be established by the mere showing of an over-valuation which might have resulted from mistake or error of judgment; it must be made to appear that the assessment is so grossly excessive as to be entirely inconsistent with an honest exercise of judgment. [Hamilton v. Rosenblatt, 8 Mo. App. 237.] The record does not disclose what evidences of value the Tax Commission had before it when it made the assessment, but in the absence of a showing to the contrary is must be presumed that it made due investigation and thereby obtained sufficient data upon which to base it. That facts existed which warranted the assessment the evidence in this case abundantly shows. A consideration of the original cost together with the replacement, the investment and the sale values would reasonably have justified the placing on the Missouri portion of plaintiff's bridge (physical property and franchise) an even higher valuation than that fixed by the Commission. The evidence wholly fails to establish the fraud charged.

For the reasons herein appearing the judgment of the trial court dismissing plaintiff's bill should be affirmed. It is so ordered. All concur, except *Graves, J.*, absent.