## Adkins v. McCleary.

(Decided October 5, 1926.)

### Appeal from Boyd Circuit Court.

1. Brokers.—In Broker's action for commissions in sale of real property, whether broker had notice of extension privilege in lease on property and whether such privilege was considered in listing contract held for jury.

2. Appeal and Error.—Reviewing court cannot consider objections urged against instructions where they are not in the record, since verdict will be considered as verdict of properly instructed jury.

S. S. WILLS for appellant.

H. R. DYSARD and C. L. MILLER for appellee.

OPINION OF THE COURT BY JUDGE McCANDLESS—Affirming.

J. H. McCleary owned a business house in Ashland, which had been occupied by H. L. Helfrich for many years under lease. S. G. Adkins is a real estate broker in that city. In May, 1923, Adkins solicited McCleary to list this building with him for sale. McCleary did this, fixing a cash price of $12,000.00 for the property, Adkins to receive as commission whatever amount the sale price exceeded this sum. Adkins found a purchaser in the

person of W. H. Carter who agreed to pay the sum of $13,000.00 in cash. Helfrich was holding under a five-year lease which expired on the first of July, 1924, but it contained a provision giving Helfrich the privilege of renewing the lease for five years on the same terms, and when Carter learned of this fact he declined to take the property. Later McCleary sold the property to Helfrich for $12,000.00 and Adkins brought suit against McCleary to recover the $1,000.00 commission. In a jury trial, verdict was rendered for defendant and Adkins appeals, the only questions urged for reversal being that the verdict is not sustained by the evidence and that the court erred in its instructions to the jury, the issue of fact being as to whether Adkins had notice of the character of the Helfrich lease, and how, if at all, this was considered in the listing contract.

On this point Adkins testifies that in the inception of the matter he had a proposal from a party to pay $12,000.00 for the building, $6,000.00 in cash and $6,000.00 on time; that he suggested it to McCleary, who declined, but said, "If he could get $12,000.00 cash for it he would let it go, and that if he did not get it that he would just hold on to it, that he did not want to sell it on credit, . . . 'he said that Mr. Helfrich had a lease on it until July 1, 1924,' and I goes back and told Mr. Carter, and he says to me, 'I will talk to Mr. McCleary,' and I says, 'All right,' and we walked up to the store and walked in back to McCleary's office and Mr. Carter said, 'McCleary, is Mr. Adkins your authorized agent to sell the Helfrich store for $12,000.00?' and he says, 'Yes, sir,' and he says, 'Possession to be given July 1, 1924?' and Mr. Carter says, 'I will just buy your building.' And Mr. McCleary says, 'I will have to go down and see Ernie (Helfrich).' " That the agreement between him and McCleary was that he was to get all of the sale price over $12,000.00; that when he and Carter visited McCleary the latter asked Carter the price he was paying for the property and he told him $13,000.00 and McCleary said it was agreed for Adkins to have $1,000.00 of this as commission. He further testifies that he went to see McCleary the next morning and McCleary told him that Helfrich had informed him that he had a five-year extension on the lease but that he (McCleary) had been unable to find his copy of it, though he would try to find it; that he went back

the following day and McCleary told him that he was still unable to find the contract and for him to go down and see Helfrich; that he did this and at first Helfrich refused to let him see the contract but finally showed it to him; that later it was discovered that the lease had an extension privilege and that Helfrich intended to exercise his option of retaining the property, Carter refused to purchase and the trade fell through; he admits that he knew that Helfrich was in possession of the property under a lease of some character, but asserts that he relied on McCleary's positive statement that possession could be given July 1, 1924.

Carter states that he had $18,300.00 deposited in the bank and was ready, able and willing to pay $13,000.00 for the property; that he went with Adkins to see McCleary between the 10th and 20th of May, 1923; he cannot remember the conversation verbatim, but says he got the impression from McCleary that the lease had about a year to run and that he was willing to take it that way, but was unwilling to take the property with a six-year lease on it; he, however, admits on cross-examination that McCleary said "that he thought it (the lease) expired on July 1, 1924, but that he was not sure of it and that he did not have his copy of the lease and could not say for certain, but that he (Carter) would have to see Helfrich to be absolutely certain about it."

McCleary testified that at the time Adkins came to see him, "He asked me if I wanted to sell that property and I told him I would. He says, 'What do you want for it?' and I says $12,000.00 cash, and I says, see here, whoever takes it has got to take it subject to a lease, and how long that lease runs yet I don't know, and he started out and came back and said he had sold the property, but I told him it was subject to the lease, and he said, 'Who has a lease on it?' and I told him, and he said, 'Let me see the lease,' and I could not find it, . . . and I says, 'Go see Mr. Helfrich, he has a copy of it,' and I presume he went down and in a little while he came back and said he would not take it subject to that lease."

"Q. You mean to tell this jury that when he came into your store and asked you if that property was for sale, and started out and you told him there was a lease on it to Mr. Helfrich and that if you sold it you sold it subject to that lease? A. I positively did."

On cross-examination he was asked:

"Q. Mr. Carter and Mr. Adkins both talked to you in your store about it? A. Yes, sir.

"Q. You talked with Carter? A. Yes, sir.

"Q. And you told them they could get possession within the next year? A. Yes, that is right.

"Q. Then they went away, didn't they? A. Yes, they did.

"Q. Then they came back and talked to you again? A. Well, I believe they did, yes, sir.

"Q. You didn't know when the lease expired? A. Well, no, I did not know. I went to look for the lease and could not find it and so I told them——

"Q. The lease had been made for four or five years? A. Yes.

"Q. You had not looked at it? A. No.

"Q. You had promised them an extension? A. Yes, sir.

"Q. You told them they could buy the building subject to the lease? A. Yes, sir, that is right.

"Q. But you did not remember there being an extension on it until Mr. Carter came and told you? A. No. I told Mr. Adkins there was a lease on it, and I told Mr. Carter there was a lease on it.

"Q. Didn't you tell them that the lease expired in about a year? A. I didn't tell them when.

"Q. What did you tell them? A. I told them that I thought the lease run out about the last of June or the first of July, but I wasn't positive about it, and when they went and found out that it didn't they said they didn't want it.

"Q. The first of July, 1924, was that when the first lease ran out and the extension began? A. I don't remember about that, all I remember there was a lease on it but I didn't know just when it expired, but there was a renewal clause on it. I told Mr. Adkins there was a lease on it when he was there.

Re-direct examination:

"Q. Regardless of when it expired, when Mr. Adkins came in there soliciting the right to sell the building you told him he would have to sell it subject to the lease? A. I positively did.

"Q. Regardless of when it expired. A. Yes, sir."

It is admitted that Adkins had notice of the lease but argued that his positive statement was that possession was to be given July 1, 1924, and that McCleary admits this, notwithstanding his assertions that the property was to be sold subject to the lease, and taken together this meant that the lease would expire on that day and possession be given; that under these facts the appellant was not bound to anticipate an extension privilege in the lease. This is a good argument in an address to the jury, but we cannot accept it as conclusive. McCleary's evidence must be taken as a whole, and when so considered, his admission in this respect may be regarded as an expression of opinion only, which was to be verified by the parties seeing Helfrich, and in view of his positive statements that he did not know when the lease expired and that the property was to be sold subject to the lease regardless of when it expired, an issue of fact was raised for the jury to determine, and we cannot say that in accepting appellee's version, their verdict was flagrantly against the evidence.

The instructions are not copied in the bill of exceptions and do not appear in any other part of the record, and for that reason we cannot consider the criticism urged against them. It follows that the verdict must be considered the verdict of a properly instructed jury, and as the pleadings are sufficient and there is some evidence upholding the verdict, the judgment must be affirmed.