## SHELL PETROLEUM CORPORATION v. STATE BOARD OF EQUALIZATION et al.

No. 25220. Jan. 29, 1935.

Withdrawn, Corrected and Refiled, Feb. 19, 1935.

Joe T. Dickerson, Geo. W. Cunningham, Ralph G. Harder, C. W. Talbot, and Stuart R. Carter, for plaintiff in error.

J. Berry King and George J. Fagin, for defendants in error.

BAYLESS, J. Shell Petroleum Corporation, a corporation, complainant before the State Board of Equalization, appeals from the judgment of said board in dismissing its complaint against the action of the board in equalizing upward the assessed value of oil storage tanks in Oklahoma. The parties will be referred to herein as complainant and board.

Twenty oil tanks owned by complainant are involved. Ten are located in Carter county, one in Lincoln county, one in Osage county, and eight in Noble county. These tanks were returned by the complainant to the respective county assessors for ad valorem taxes at a value calculated at the rate of five cents per barrel capacity. By reason of their capacity, certain of these tanks were thus valued and returned for assessment by the complainant at the figure of $2,750, and others of greater capacity at the figure of $4,000. The county assessor accepted these returns and entered assessments accordingly. The board, while in session pursuant to the authority of our Constitution and statutes, adopted a resolution to assess all oil storage tanks in Oklahoma uniformly and equally; those under seven years of age at nine cents per barrel capacity. Complainant thereupon filed its complaint and tried the matter before the board. It assigns two grounds of error in its brief, to wit:

(1) "The State Board of Equalization was without authority and jurisdiction to either assess or to equalize the value of appellant's property in excess of its fair cash value estimated at the price it would bring at a free and voluntary sale on assessment date."

(2) "The State Board of Equalization adopted an arbitrary system of valuation without regard to and in violation of the principle 'of uniformity and equality required by the Constitution of Oklahoma and the Fourteenth Amendment to the Constitution of the United States."

The first proposition involves most of the evidence introduced. The rules of law applicable to this situation are: First, a presumption of correctness and fairness in the action of the board (Cooley on Taxation, [4th Ed.] vol. 3, p. 2442; 61 C. J. 611; Southern Surety Co. v. Waits, 45 Okla. 513, 146 P. 431); that the board is composed of members familiar with the assessment of property values and that the board had sufficient evidence upon which to act, and its judgment thereon is as competent as that of a court in the absence of showing of unfairness, irregularities, or discrimination (State Railroad Tax Cases, 92 U. S. 575, 23 L. Ed. 663; St. Louis Electric Bridge Co. v. Koeln, 315 Mo. 424, 287 S. W. 427; In re C. & N. W. Railway Co., 121 Neb. 592, 237 N. W. 657, 238 N. W. 520); and second, that the party attacking the action of a board of assessment and equalization has the burden of proving his contentions and overcoming these presumptions by clear and convincing proof and no other. See In re Assessment of Kansas City Southern Ry. Co., 168 Okla. 495, 33 P. (2d) 772, and authorities cited therein.

Complainant introduced evidence to show that most of these tanks are in use; that they vary in their age, the material of their composition, and their state of repair; that at least one (in Osage county) is considered worthless for any other purpose than junk; and that all of the small tanks are worth only $250 each, except one valued at $200 and one valued at $300, and the large tanks are valued at $4,000 each. However, upon cross-examination of these witnesses it appeared that they knew of only one isolated instance of the sale of tanks and that was in Carter county; these witnesses did not know the purpose for which said tanks so sold were bought or sold nor any of the details entering into the sale transaction, except the price; these witnesses admitted that the value which they placed upon the tanks involved was a junk value, although practically all of them were in constant use; these witnesses further ad-

mitted that, in addition to the junk value of these tanks, to place one in the condition in which they then existed would require the expenditure of around $8,000 per tank; and that they had in their tax returns for this year, and in their tax returns for previous years, valued these tanks upon a basis of capacity only, and this year had voluntarily valued them at $2,750 and $4,000, respectively, which in so far as the smaller tanks were concerned was more than ten times the value placed upon the smaller tanks at the hearing, and that they had for the previous year or years returned these tanks for assessment at 10 and 15 cents per barrel capacity, which is greatly in excess of the value placed upon them at the trial of this case, without any effort to show a corresponding reduction in the actual physical condition or value of the tanks. It is our opinion, upon a consideration of the evidence introduced by the complainant, that it has not sustained the burden of proof which rests upon it and has not shown that these tanks were overvalued by the board.

The complainant insists that under our Constitution and statutes the only measure of value which can be applied is the fair cash value of the property estimated at what it would bring at a fair voluntary sale. It is true that this is the measure of value laid down by our Constitution and our Legislature, but the problem of tax assessment in our present-day economic life is more complex than is argued by the complainant. It would serve no useful purpose to discuss the many elements which enter into the determination of the fair cash value of a piece of property when it is being considered for tax assessment, but in our judgment one isolated sale of such a class of property, without further evidence by which motives on the part of the vendor and vendee, the condition of the tanks sold in comparison with the one under consideration, and a comparison of the size, age, material of composition, etc., of the respective tanks, is not sufficient to establish fair cash value. Many times in the conduct governing the officials charged with the administration of duties involving judgment of business properties, usages, customs, and systems, the actual custom and usage of the industry under consideration will serve as a fair measure by which to judge it. In this respect it is shown by the record in this case that not only complainant but practically all of the major

units of the oil industry have, for the lack of better system of valuation, adopted the custom of valuing their oil storage tanks for tax purposes on the capacity basis. In fact, complainant in this case does not stress the adoption of this basis so much as it does the actual figure in dollars and cents. In this case it is interesting to notice that its competitors made their returns on a basis ranging from nearly nine cents to fifteen cents per barrel, or for nearly two to three times the value placed upon the same class of property by complainant.

In connection with the discussion under this assignment of error, the complainant argues that due process of law has been denied it, in that no notice of intention to change the assessed valuation of this property was given it by the board. The Constitution of Oklahoma, sec. 21, art. 10, provides for a State Board of Equalization to be composed of certain state officials and to perform certain specified duties, as well as such other duties as may be prescribed by law. The Legislature of Oklahoma has enacted legislation in pursuance of this constitutional provision, and the statute governing the action of the State Board of Equalization at the time the particular assessment complained of was due to be made was section 12656, O. S. 1931 (9689, C. O. S. 1921), which section provides certain duties, as follows:

"* * * To examine the various county assessments and to equalize, correct, and adjust the same as between the counties by increasing or decreasing the aggregate assessed value of the property or any class thereof, in any or all of them. * * *"

By the provisions of this section of the statute, said State Board of Equalization is required to hold an annual session beginning on the third Monday of June of each year. This has been so practically since statehood and no better known or advertised proceedings in connection with our state government exist. Neither by the provisions of our Constitution, supra, or of said statutes, supra, is notice of the action of the board required to be given, except in so far as changes in assessments as to counties are concerned, and then notice to the county commissioners only. We have construed this provision to mean that notice of changes in assessment is not necessary to be given to individuals. Carrico v. Crocker, 38 Okla. 440, 133 P. 181; In re McNeal, 35 Okla. 17, 128 P. 285. A similar contention was raised in the Supreme Court of the United States in considering the "State

Railroad Tax Cases," supra, and that court disposed of the contention by saying:

"It is charged that the board of equalization increased the estimates of value so reported to the auditor, without notice to the companies, and without sufficient evidence that it ought to be done; and it is strenuously urged upon us that, for want of this notice, the whole assessment of the property and levy of taxes is void.

"It is hard to believe that such a proposition can be seriously made. If the increased valuation of property by the board without notice is void as to the railroad companies, it must be equally void as to every other owner of property in the state, when the value assessed upon it by the local assessor has been increased by the board of equalization. How much tax would thus be rendered void it is impossible to say. The main function of this board is to equalize these assessments over the whole state. If they find that a county has had its property assessed too high in reference to the general standard, they may reduce its valuation; if it has been fixed too low, they raise it to that standard. When they raise it in any county, they necessarily raise it on the property of every individual who owns any in that county. Must each one of these have notice and a separate hearing? If a railroad company is by law entitled to such notice, surely every individual is equally entitled to it. Yet, if this be so, the expense of giving notice, the delay of hearing each individual, would render the exercise of the main function of this board impossible. The very moment you come to apply to the individual the right claimed by the corporation in this case, its absurdity is apparent. Nor is there any hardship in the matter. This board has its time of sitting fixed by law. Its sessions are not secret. No obstruction exists to the appearance of anyone before it to assert a right or redress a wrong; and, in the business of assessing taxes, this is all that can be reasonably asked."

When the board had acted, complainant was given an opportunity to file a complaint before it, which complaint was set for hearing and heard by the board, and the complainant had an opportunity to introduce all of the evidence which it had or desired to introduce. The board heard and considered the complaint made, and we cannot understand complainant's contention of a denial of hearing—or due process. The action of the board in dismissing the complaint was tantamount to a reiteration of the result which it had previously adopted.

The second proposition asserts that the system of valuation adopted is arbitrary in that the constitutional requirement of uniformity and equality is disregarded. The property involved (oil storage tanks) is of a distinct class both as to character, identity, and use. No other type of property is mentioned or cited as being anywise similar in the sense of furnishing an analysis or basis for a comparison of values or methods of assessment. That this class of property may be assessed upon an equal and uniform basis of value as to class, although being an entirely different method to that applied to other classes of property, is too well settled to permit of argument. See Travis v. Dickey, 96 Okla. 256, 222 P. 527; also In re Assessment of Kansas City Southern Ry. Co., supra. The system adopted is not arbitrary in the sense that it was deliberately adopted for the purpose of discrimination or without regard to its utility or practical application, or in order to avoid equal and uniform operation. No showing is made, nor is the contention made, that location, accessibility, numbers, or market demands played any part in determining the value of these tanks. The record is conclusive that the problem of valuation for tax purposes has been solved by the oil industry by adopting the units of capacity as the basis. Great stress is laid upon the age of some of these tanks. It will be noticed that due allowance was made for difference in age and two classes were created, although no such allowance was claimed by complainant in its tax returns, nor is such difference made in the return of the other companies which reflect the collective judgment of the industry. The system adopted applied to the state at large.

The judgment is affirmed.

McNEILL, C. J., OSBORN, V. C. J., and BUSBY, WELCH, CORN, PHELPS, and GIBSON, JJ., concur. RILEY, J., absent.