The KANSAS CITY SOUTHERN RAIL-WAY COMPANY, The Arkansas Western Railway Company, Fort Smith and Van Buren Railway Company, and St. Louis-San Francisco Railway Company, Corpo-rations, Plaintiffs in Error,

v.

T. L. FERGUSON, County Treasurer, and Independent School District No. 2 of Le-Flore County, Oklahoma, a municipal cor-poration, Defendants in Error.

No. 37135.

Supreme Court of Oklahoma.

Jan. 8, 1957.

Satterfield, Franklin & Harmon, Oklahoma City, Kelly Brown, Muskogee, Windham & Windham, Poteau, for plaintiffs in error.

Joe K. Page, County Atty. of LeFlore County, for defendant in error, T. L. Ferguson as County Treasurer.

Alpheus Varner, Poteau, for defendant in error and intervenor, Independent School Dist. No. 2.

CARLILE, Justice.

This action was instituted in December, 1953 by The Kansas City Southern Railway Company, The Arkansas Western Railway Company, Fort Smith and Van Buren Railway Company, and St. Louis-San Francisco Railway Company, corporations, against T. L. Ferguson, County Treasurer of LeFlore County, to recover ad valorem taxes paid under written protest; Independent School Districts Nos. 2 and 3 were made parties defendant in the action and subsequently the third cause of action, which only involved School District No. 3, was dismissed by the plaintiffs in error.

Plaintiffs allege as their first cause of action that a levy of 1.875 mills for general fund purposes, and a levy of 0.913 mills for building fund purposes were made in LeFlore County against plaintiffs' property for the fiscal year ending June 30, 1954, and that taxes were assessed against plaintiffs' property for the total sum of $10,346.46 for the benefit of Independent School District No. 2; that said levies were made for the alleged benefit of Independent Separate School District No. 2 when in fact certain levies, or an indeterminable portion thereof, were made for Negro Majority School District No. 82, and that the levies made and the taxes assessed thereon were wholly illegal and void.

As a second cause of action the plaintiff, The Kansas City Southern Railway Company, alleges that a general fund levy of 20 mills, a building fund levy of 5 mills and a sinking fund levy of 3.90 mills was made against the property of the said plaintiff company for the fiscal year ending in 1954 for the benefit of White Majority School District No. 2 and Negro Majority School District No. 82, and that the amount of taxes assessed against the plaintiff's property within District No. 82 under said levy was $2,235.47. The said plaintiff further alleges that the levy made and the taxes assessed thereon were illegal and void because the said Negro Majority School District No. 82 was erroneously purported to be annexed to White Majority Independent School District No. 2, but such annexation was without authority of law, and in contravention of the State Constitution.

The plaintiffs further allege that they paid to the defendant Ferguson, County Treasurer, under written protest the amount of the illegal taxes so levied against their properties, and prayed judgment for

recovery of the amounts so paid under protest. Answers were filed by the County Treasurer and by the defendant School District No. 2, generally denying the allegations of plaintiffs' petition except the School District No. 2 admitted that the tax levies were made against plaintiffs' property but denied that they were illegal or that any part thereof was made for Negro Majority School District No. 82, and denied that there is any Negro Majority School District No. 82 within the county.

Upon a trial of the action the issues were found in favor of the defendants and plaintiffs were denied any recovery. No specific finding of fact or conclusion of law was made. Upon denial of motion for a new trial the plaintiffs appeal. The parties will be referred to as they appeared in the trial court.

We quote the following exerpts from the brief of plaintiffs, which states their position with respect to the issues involved:

"The legality of the taxes paid under protest referred to in the first and second causes of action turns upon one legal proposition—Was there a valid annexation of School District No. 82 to Independent School District No. 2 on July 8, 1953? If the annexation was lawful, then the taxes were properly imposed by the County Treasurer."

" * * * It is the contention of the plaintiffs that at the time of the purported annexation of School District No. 82 to Independent School District No. 2, the majority school in School District No. 82 was the Negro School and that the White School was the separate school. If we are correct in this contention, then the State Board of Education was without authority of law to disorganize that school district and annex it to another district merely because the average daily attendance in the separate school (the White School) had fallen below 13 the preceding year.

The Negro School in the District had an average daily attendance the preceding year of 102, and, being the majority school of School District No. 82, was not subject to disorganization and annexation by the State Board of Education. * *. * " .

The State Board of Education was authorized and directed to disorganize a school district and annex the territory to another district upon the conditions set forth in Title 70, Section 7–2 (c) and (d) O.S.1951, which section will be later referred to herein.

The record in the present case shows that on July 8, 1953 the State Board of Education, pursuant to the statute above referred to and which was then in effect, gave notice that School District No. 82 of LeFlore County was disorganized and the territory annexed to School District Spiro I–2 LeFlore County.

The record further shows that in the school year preceding the order in question, the average daily attendance for the White school in District No. 82 was 9, while the average daily attendance in the Negro school was 102, and that in 1953 and for several years preceding the scholastic enumeration of the district showed the number of colored children in the district to exceed the number of White children.

It is further shown that the members of the School District Board of the District 82 were members of the White race and had been such since 1923, and the school district tax levies during such period had been used to pay the expenses of the White school.

Whether or not the White or Negro school in District No. 82 was the dependent school or the separate school from which the average daily attendance should be determined as a basis for disorganization of the district depends upon a proper application of Title 70, Section 7–2(c) and (d) to the evidence shown, which statute reads:

"(c) Whenever any school district shall have had an average daily attendance for one (1) year of less than

thirteen (13) or shall have failed to maintain school within the district for one (1) year, the State Board of Education shall declare such district to be disorganized and shall annex the territory comprising such district to the district or districts, maintaining transportation within the transportation area or areas in which such territory is located.

"(d) Notice of the disorganization of a school district and annexation of its territory to another district or districts under the provisions of this Section shall be given by the State Board of Education to the Oklahoma Tax Commission and to the county superintendent of schools, county clerk, county treasurer and county assessor of each county in which any of the territory of the disorganized district lies."

Title 70, Sec. 5-3, O.S.1951 reads:

"The county separate school in each district is hereby declared to be that school in said school district of the race having the fewest number of children in said district. Provided the county superintendent of schools of each county shall have authority to designate what school or schools in each school district shall be the separate school and which class of children either white or colored shall have the privilege of attending such separate school or schools in said school district. Members of the district school board shall be of the same race as the children who are entitled to attend the school of the district, not the separate school."

The case of Musick v. School District No. 41 of Kingfisher County, 186 Okl. 371, 98 P.2d 590, 591, involved a statute similar to the one next above quoted, and the opinion states:

"Where, as here, there are two schools in one district, the county superintendent may designate which shall be the common and which the separate school and, regardless of which race is in the majority with respect to school children, may direct which class shall attend the respective schools. [Citing cases.]"

The undisputed testimony of the defendant Ferguson, County Treasurer, was to the effect that in the year 1923, and for the years subsequent thereto the White school board of District No. 82 transacted the business of the district and controlled its expenditures and that the County Superintendent controlled the separate or Negro school; that in 1923 the tax levy for the majority school was used to pay the expenses of the White school, and that such condition continued until the district was disorganized.

Mr. Howery, the County Superintendent of Schools, testified that in July, 1951, and at all times thereafter until the district was disorganized, the dependent school in the district was controlled by a White school board. He was asked:

"Q. Did you go back and look in the records of your predecessors to see whether or not any Order was there saying in District 82 the white school should be the majority and the negro school the minority? A. No, sir.

"Q. In other words you found the practice and just continued it? A. Yes, sir.

"Q. You don't know whether there is any Order or not in the vault of your office? A. No, sir."

The record shows that in June, 1953, the County Superintendent wrote the State Board of Education asking that District 82 be isolated, and if it were impossible to do so, then he gave notice that the Negro school would be the majority school and the White school the separate one. The State Board denied the request and made the order disorganizing the district. Any order made by the County Superintendent in June, 1953 designating which school in the district would be the separate school would not have changed or affected the duty of the State Board of Education to

act under Title 70, Section 7–2(c), because that section related to the average school attendance in the district as it existed at the end of the year. The plaintiffs collaterally attack and challenge the validity of the order of the State Board of Education disorganizing the Dependent District No. 82 and annexing the territory to Independent District No. 2. The only evidence produced by the plaintiffs on the question of the validity of the order of the State Board of Education is the undisputed evidence that the number of Negro pupils in School District 82 outnumbered the White pupils and that the average daily attendance in the Negro school for the year preceding the order in question was 102, and the average daily attendance in the White school was less than 13.

The County Superintendent of Schools testified, in substance, that he had made no order designating either the White school or the Negro school as the separate school of the District. He also stated, as herein quoted, that he had not looked in the records of his predecessors to see if any such order had been made. We do not consider the proof that the Negro children in the district outnumbered the White children sufficient to establish the invalidity of the order of the State Board of Education, especially when considered with the undisputed evidence that a White school board had transacted and controlled the business and finances of the White or Dependent School for several years, and the Negro school had been under control of the County Superintendent, and that the tax levies for the majority school had for several years been used to pay the expenses of the White school. Ervin v. Seikel, 189 Okl. 682, 119 P.2d 563, holds in accordance with the Statute, Title 70, Section 5–3, supra, that the Board of Directors of Dependent School District must be of the same race as the children who are entitled to attend the school of the district, not the separate school. The White school was recognized and operated as the school of the district and was at least the de facto school. Griffin v. Thomas, 86 Okl. 70, 206 P. 604.

The State Board of Education and the members thereof were not parties to this action, but the Board records were available for inspection, and it will be presumed, in the absence of competent proof to the contrary, that the Board had before it records and information to justify their action. Reed v. Ross, 194 Okl. 195, 148 P.2d 782, holds:

"It is presumed that the acts of officers in discharge of the duties of their office are regular and such as are required by law, and t' is presumption continues until overcome by proof."

Such presumption can only be overcome by clear and convincing proof. In re Assessment of Kansas City Southern Ry. Co., 168 Okl. 495, 33 P.2d 772.

"The prima facie correctness of an assessment when made by the proper officers must be affirmatively overcome by appropriate and sufficient proof excluding every reasonable hypothesis of a legal assessment." Shell Petroleum Corporation v. State Board of Equalization, 170 Okl. 581, 41 P.2d 106.

"It is a presumption of law that all public officers perform their duty, and in the absence of clear proof to the contrary, this court will refuse to hold that they did not do so in issuing warrants for claims against municipalities." Hamilton Tp., Okmulgee County v. Underwood, 81 Okl. 256, 198 P. 300.

Proof that the White race had the fewest number of children in the district did not, under the facts shown, overcome the presumption that a County Superintendent of Education in that county had designated the separate school and which class of children should attend the same.

In the reply brief of the plaintiffs they assert that the present appeal is the last chance the people of the district have to save their school district. In response thereto we call attention to the case of Shoates v. Howery, D.C., 130 F.Supp. 879, 881; certain Negro citizens of the school

district 82 instituted the action in the Federal District Court, Eastern District of Oklahoma, against the County Superintendent of LeFlore County and other officials and alleged that the dissolution of the school district 82 violated Oklahoma law and deprived them of their Federal Constitutional rights and prayed that the officials be required to recognize the present existence of district 82, and asked that the Colored children therein be designated as the majority school. The Federal Court, in its opinion of April, 1955, in denying the relief sought in that case stated, in part, as follows:

> "In addition, it is this Court's impression that the action taken by the defendants was in accordance with the applicable local law as now written; and, did not of itself amount to a failure to give equal protection to all persons or races. * * * Only the construction of the Oklahoma law, and not the constitutionality of the statutes is raised in this suit.

> "The instant case should be dismissed. Plaintiffs must prosecute their cause of action in the proper state forum."

■ The present action is a statutory proceeding, governed by equitable principles, and this court will not reverse the judgment of the District Court unless it is shown that the same is contrary to law or against the clear weight of the evidence. Chapman v. Tulsa Used Lumber & Wrecking Co., Okl., 299 P.2d 787.

■ Upon consideration of the record and evidence we conclude and hold that the judgment of the District Court is supported by the law and is not against the clear weight of the evidence. Judgment affirmed.

JOHNSON, C. J., WILLIAMS, V. C. J., and CORN, DAVISON, HALLEY and JACKSON, JJ., concur.

BLACKBIRD, J., dissents.