**PECK'S PRODUCTS COMPANY et al., Appellants,**

v.

**Del L. BANNISTER, Collector of the City of St. Louis, Respondent.**

**No. 49257.**

Supreme Court of Missouri,

Division No. 2.

Dec. 11, 1962.

Chopin & Boisaubin, Alfred L. Boisaubin, St. Louis, for appellants.

Thomas J. Neenan, City Counselor, Thomas F. McGuire, and John J. Horgan, Asso. City Counselors, Stephen M. Hereford, Asst. City Counselor, Paul Welch, Donald Gunn, St. Louis, for respondent.

BARRETT, Commissioner.

Ten plaintiffs, owners of commercial and industrial property, have joined in this "proceeding in equity" against the Collector of the City of St. Louis to contest a part of the 1959 state and county tax assessments against land (separated from its improvements) owned by them. In their argument the plaintiffs say, "This is an action in equity" and that they "are contesting their ad valorem real property taxes for the year 1959." In their jurisdictional statement the plaintiffs say, "This proceeding is one to declare an order of the Missouri State Tax Commission fixing and determining the as-

sessed valuation of real estate, null and void" and that "The proceeding is also one in which appellants seek to enjoin the collection of a portion of their real estate taxes for a given year" for the reasons that the assessments were made in violation of the uniformity, classification and assessment provisions of the constitution (Const. Mo., Art. 10, Secs. 3–4, V.A.M.S.) and therefore infringe the due process safeguards of both the state and federal constitutions. Mo. Const., Art. 1, Sec. 10, Fourteenth Amendment Const. U.S. After extensive briefs and arguments and after a six-day trial, the circuit court entered a general judgment in favor of the defendant collector and dismissed the plaintiffs' action and they have appealed. Notwithstanding the statements in their brief and argument it is very important, in fact it is of the essence, to precisely understand just what the plaintiffs have attempted to do throughout this proceeding and what it is they seek upon this appeal. Therefore it is necessary to briefly summarize their petition, consider at least illustratively from this voluminous record some of the salient facts and finally analyze the basic and determinative arguments made in this court.

Two of the plaintiffs are owners of so-called business or commercial property; in downtown St. Louis there is the International Building at 722 Chesnut Street, and in South St. Louis, 6200–6300 Chippewa, there is one of the original shopping centers, Hampton Village Shopping Center, owned by Webb & Knapp, Inc. Then to select for the purposes of illustration from the eight industrial properties there is Foster Bros. Manufacturing Company at 2101 South Vandeventer and McCabe-Powers Body Company at 5900 North Broadway. Each plaintiff separately alleges its ownership of described property and sets forth the 1959 tax assessment, for example Webb & Knapp's Hampton Village, land $1,273,930, improvements $1,356,700, total $2,630,630. Then it is alleged that in July 1959, the State Tax Commission issued an order "which purported to equalize the valuation

of real property among the respective counties." But it is alleged that in violation of its statutory and constitutional duties the commission "knew or should have known that it had deliberately, intentionally and systematically ordered and permitted the assessment of real property of petitioners and of other real property in the City of St. Louis at a higher and unequal valuation than the assessment of similar, comparable and other real property located in other counties of the state." In this connection it is charged that since 1953 the commission has known that real property in St. Louis, including the plaintiffs' property, was assessed at a higher valuation than real property in other counties and was "bearing a greater burden of taxation than real property in other counties within the state" and therefore there was discrimination against St. Louis property and a consequent infringement of due process and equal protection of the laws. Then after setting forth the statutory duties of assessors it is alleged that for the year 1959 and for many years previously the Assessor of the City of St. Louis and his deputies failed to assess the plaintiffs' properties at their "actual cash values," that in so doing the assessor had "deliberately, intentionally, fraudulently and systematically ordered and permitted the assessment of petitioners' property and other property * * * on the basis of substantial non-compliance with said statutory provision(s)," and therefore the petitioners conclude that the assessments of their properties are void.

The plaintiffs have computed and paid that part of the tax attributable to improvements and they have tendered into court the amount of the tax on the land valuation and, according to them, are "contesting only the foregoing portions of assessments against their land for the taxable year, 1959." In view of all these allegations the plaintiffs assert that they are "without an adequate, certain and complete remedy at law" to prevent systematic discrimination by the State Tax Commission "in the matter of purportedly equalizing the valuations of real prop-

erty assessments among all the counties in the State of Missouri," particularly since there is no provision for administrative appeal or statutory remedy for taxpayers at this stage of the taxing process. In addition to general equitable relief the plaintiffs pray that the court grant the following five types of relief: (1) declare null and void the commission's 1959 order of equalization, (2) reduce the valuation of real property in St. Louis "to the same or similarly comparable valuation of real property as same is assessed in other counties," (3) declare void "that portion of the assessments of the above described land of petitioners and all assessments of all state, school and local and other taxes against said properties, based on such assessments," (4) enjoin and restrain the defendant collector from attempting to collect "any unpaid taxes" for 1959, and (5) relieve the plaintiffs of any liability for interest and penalties for their failure to pay the tendered part of the taxes for 1959.

In the first place, with respect to the general relief sought and certain of the prayers, it is well to note that when a taxpayer pursues his administrative remedy and directly appeals a tax commission order neither a circuit court nor an appellate court has the power to fix the valuation and thus assess specific property, "the courts have no right to substitute their judgments, as such, for the values fixed by the assessor or by reviewing boards." Cupples-Hesse Corporation v. State Tax Commission, (Mo.) 329 S.W.2d 696, 700; Koplar v. State Tax Commission, (Mo.) 321 S.W.2d 686, 697. Despite their seeming hodgepodge, our constitution and statutes contemplate a comprehensive plan for the valuation of property for tax purposes and in general the administration of the over-all scheme, including valuation and assessment, has been entrusted to the State Tax Commission. Const. Mo., Art. 10, Sec. 14, Ch. 138 R.S.Mo.1959, V.A.M.S.; In re St. Joseph Lead Company, (Mo.) 352 S.W.2d 656, 659. When the administrative remedy is pursued the court on appeal may only determine, with deference to findings involving credibility, whether the commission could reasonably have made the finding and set aside decisions clearly contrary to the overwhelming weight of the evidence. Ulman v. Evans, (Mo.) 247 S.W.2d 693, 694; Drey v. State Tax Commission, (Mo.) 345 S.W.2d 228, 234. Assuming that plaintiffs are entitled to maintain this proceeding in equity, the court in another suit to enjoin the collection of taxes said, "it is perhaps not amiss to say that chancery courts must not be made the resort of all who may be discriminated against in the assessment of their property." Jefferson City Bridge & Transit Co. v. Blaser, 318 Mo. 373, 386, 300 S.W. 778, 785. Despite the scope of appellate review of court-tried cases (Sup.Ct.Rule 73.01(d), V.A.M.R.) and despite the fact, as appellant argues, that equity cases may be reviewed de novo, "We have not set the evidence out in detail for review, because it is not within our province to weigh it, make a specific finding as to the value, and then substitute our judgment for that of the tax commission and the board of equalization. Our function (there also an equity suit involving an assessment) is limited to the setting aside of the assessment as made, if it be found to be fraudulent." St. Louis Electric Bridge Co. v. Koeln, 315 Mo. 424, 429, 287 S.W. 427, 429. For the indicated reasons, the consequence in this case is that in no event should this court attempt to find and fix values as to specific property and thus reduce or increase assessments ordered by the commission or levied by the assessor. By the same token neither should the court undertake to relieve the plaintiffs of interest or penalties not in fact involved in this proceeding. These considerations are not determinative but they do have an over-all bearing upon the final disposition of the appeal.

The appellants insist that their primary attack is against the intercounty assessment on the ground of fraud on the part of the State Tax Commission: "These plaintiffs have attacked the validity of the inter-county equalization order." Because of the allegation of fraud against the commission it

is asserted that the plaintiffs have the right to maintain this suit in equity to enjoin the collection of the tax and thus bypass the local county assessing authorities and boards, the State Tax Commission and ultimately all the conventional administrative remedies. Despite their protestations, however, the plaintiffs have also launched, more or less obtusely, an attack on the intra-county procedure and assessments. For example one of their complaints here is that "The assessment on plaintiffs' property is void because (the assessor and) the deputy assessors failed to assess according to the norm prescribed by statute." And throughout their brief and argument there is a tangentical if not direct attack upon the procedures of the county taxing agencies and their appraisal and assessment of the plaintiffs' properties even as compared to other similar properties in the City of St. Louis. And admittedly the plaintiffs did not so much as attempt to pursue the conventional administrative remedies, particularly the remedies contemplated by the 1945 constitution. Specifically, they did not appeal their valuations and assessments to the local board of equalization and the State Tax Commission and finally seek review of the commission's order under the Administrative Procedure Act. Instead of pursuing any administrative remedy they have prosecuted this proceeding in equity claiming that the administrative procedures afford an inadequate and incomplete remedy.

■ It is not necessary to pursue this subject in detail, examine the rules and apply them to specific points and arguments in the plaintiffs' brief. Judicial policy has not always been spelled out clearly, perhaps, and sometimes it has been "necessary that we rechart our course" in an attempt to reconcile the cases, particularly Boonville National Bank v. Schlotzhauer, (1927) 317 Mo. 1298, 298 S.W. 732 and subsequent cases. Nevertheless, in an attempt to "rechart our course" these observations were made, also by the court en banc, "in a general way, however, that the exclusive jurisdiction to grant equitable relief will not be exercised in any case where the legal remedy, either affirmative or defensive, which the injured or defrauded party might obtain would be adequate, certain, and complete. * * * In any event such rule should, on grounds of public policy, be rigorously applied in attacks on assessment judgments. * * * We do not recede from any of the positions taken in the Schlotzhauer Case; we merely supplement its holdings by the further holding that a taxpayer, who is aggrieved by a fraudulent assessment of his property is not entitled to relief (for undervaluation of other property) in a court of equity until he has first exhausted the remedies afforded by the statute." Brinkerhoff-Faris Trust & Savings Co. v. Hill, 323 Mo. 180, 189, 194, 19 S.W.2d 746, 749, 752. Later, in a suit in equity to set aside an alleged excessive assessment by a county assessor, it was said, "This court en banc held in Brinkerhoff-Faris Trust & Savings Co. v. Hill * * * which has been followed in at least seven recent decisions, that a taxpayer who claims his property has been fraudulently assessed, must exhaust his remedy under these statutes before he can resort to equity; and that 'the remedy provided by statute is adequate, certain and, complete.'" State ex rel. Merritt v. Gardner, 347 Mo. 569, 574, 148 S.W.2d 780, 783. And finally, in the first Cupples-Hesse case in 1959, it was announced as a general rule "that ordinarily the legal remedial procedure provided by the Statutes and the Section of the Constitution mentioned supra affords the taxpayer adequate remedies for complaints of fraud, illegality or discrimination in the assessment of taxes for a given year and that such procedure must ordinarily be availed of by the taxpayer before a resort to equitable relief." Cupples-Hesse Corporation v. Bannister, (Mo.) 322 S.W.2d 817, 821. This rule, as with the preceding factor, is not determinative of the essential merits of this appeal, but it certainly renders unnecessary consideration of so much of the plaintiffs' claims as relate to the actions of local taxing authorities. As to local taxing authorities and intracounty valuations and

assessments the plaintiffs are concluded by the fact that they made no effort to obtain administrative relief. Thus the merits of this appeal are in fact reduced to the plaintiffs' single claim of fraud againt the State Tax Commission and its action in so far as it relates to aggregate intercounty valuation and assessment.

█ This appeal is not concerned with whether the petition states a cause of action in fraud and therefore a case of equitable cognizance (Columbia Terminals Co. v. Koeln, 319 Mo. 445, 3 S.W.2d 1021), it is assumed for immediate purposes that the petition states a claim upon which relief could be granted. This is not to say that the plaintiffs are not entirely serious in their claims here, nevertheless there should be the caveat that the charge of fraud is not a mere formal charge lightly invoked or, more importantly, established upon meager proof. But again the ultimate decision is not to turn alone on this point and it is sufficient to briefly note certain generalities from a few of the leading tax assessment cases. "Such fraud will not be established by the mere showing of an over-valuation which might have resulted from mistake or error of judgment; it must be made to appear that the assessment is so grossly excessive as to be entirely inconsistent with an honest exercise of judgment." St. Louis Electric Bridge Co. v. Koeln, 315 Mo., 1. c. 429, 287 S.W., 1. c. 429. As to both pleading and proof, "The sole complaint appears to be that the assessed value was fixed at more than its cash value. * * * If the bill contained nothing more than the bare charge that plaintiff's property was assessed at more than its cash value, it would be clearly demurrable, because a charge of mere overvaluation does not ordinarily state a case of fraud, or even of discrimination. In order to allege discrimination, there must be the further charge that other property in the same class was undervalued." Jefferson City Bridge & Transit Co. v. Blaser, 318 Mo., 1. c. 384, 300 S.W., 1. c. 784.

█ In connection with the charge of fraud the plaintiffs claim to have established the fact and the tax commission's knowledge of it by showing the six annual intercounty equalization orders from 1953 to 1959, computing and inferring from them that real property in St. Louis had been "assessed in the aggregate at 36% of value * * while real property throughout the State of Missouri has been assessed in the aggregate below 30%." In part this particular argument overlooks the significant fact that "Each year's tax is a separate transaction and each action relating to each year's tax is a new cause of action. * * * It is not clearly seen that the issues of law and fact in the assessment of the 1956 tax were or are to be all the same in assessing the taxes for 1957 and for the stated subsequent years, even though as alleged, the 'formulas and methodology' utilized by the Assessor in 1956 were or are to be utilized by the Assessor in the assessments for 1957 and subsequent years." Cupples-Hesse Corporation v. Bannister, 322 S.W.2d 1. c. 823. It is also said by the plaintiffs that as to aggregate intercounty assessments and orders the proceedings are ex parte, that there is no provision or opportunity for taxpayer representation, a hearing, or an appeal and that therefore they are without adequate legal remedy or relief from administrative action. The argument may be sound in part, but if so it does not mean that there is no possible relief from intercounty valuations. Counties if not other political subdivisions are interested parties in tax valuations and assessments and in certain circumstances may secure judicial review and relief from some tax commission orders. May Department Stores v. State Tax Commission, 308 S.W. 2d 1. c. 757; In re St. Joseph Lead Co., supra. But here the plaintiffs claim that the proof has brought their case within the indicated requisites for relief, particularly as indicated in the second Cupples-Hesse case, 329 S.W.2d 696. While these cases and rules have a material bearing, as indicated, they are not necessarily determinative

and it is not necessary to pursue them further and precisely illustrate their applicability or inapplicability to each of the plaintiffs' specific claims.

The only witness offered by the defendant collector was an experienced, professional appraiser of St. Louis property. He examined the property of each of the plaintiffs and valued it in the light of his definition of "fair market value." He compared their properties, as did some of the plaintiffs' expert witnesses, to other comparable property in the city and to what sales there had been of similarly located property. In addition, he employed plats, photographs, zoning maps and other material furnished by the city's staff. In each instance he described in detail the size and location of the property, its improvements and related facilities and when requested supported his reasons for his opinions of value. The plaintiffs do not attack the valuations found by this witness, their only attack on him is that "The testimony of defendant's appraiser as to the value of plaintiffs' lands is inadmissible because *it is at war and inconsistent with the Assessor's theory of value.*" (Emphasis supplied.)

These are the circumstances which the plaintiffs say establish the defendant's theory of value and their specific point that the testimony of this witness is "inadmissible." The plaintiffs took the deposition of the Assessor of the City of St. Louis and of the several deputy assessors who engaged in the valuations of their properties. The plaintiffs sought to show by the depositions of the assessor and his deputies that they did not know the "true value in money" of plaintiffs' or any other property, that they did not assess the land at "actual cash value," in short, that they did not assess "according to the norm prescribed by statute" and therefore the valuations and assessments were void. Even though they did not attempt to pursue an administrative remedy, they took the deposition of one of the members of the State Tax Commission. He was particularly examined with respect to the commission's use of a "ratio study" in arriving at its intercounty order. When offered it was said that the commissioner's deposition was "substantial evidence to attack the validity of that order" in that it showed over a period of years that property "in Missouri was assessed at 30% level, and property in St. Louis was being assessed at 36%." These witnesses were not parties to this suit and, as stated, the defendant offered no witnesses other than the professional appraiser. It is not necessary, however, to say whether any of these depositions, particularly that of the member of the commission (Foster Bros. Mfg. Co. v. State Tax Commission, (Mo.) 319 S.W.2d 590, 594; State ex rel. Gottlieb v. Western Union Tel. Co., 165 Mo. 502, 65 S.W. 775), were properly admissible in evidence. As to the depositions of the assessor and his deputies the plaintiffs assert that "Deputy assessors are in privity with defendant Collector, hence their depositions may be used as admissions against interest." Thus it is through "privity" and as "admissions against interest" that the plaintiffs claim to have established the "assessor's theory of value" by which they now say he is conclusively bound.

It is not necessary to examine these contentions in detail, in so far as they relate to complaints of local action they have been disposed of inferentially. These witnesses were not in fact parties to this action, and whatever their relationship to other taxing officials and to the various political subdivisions, it certainly is not comparable to the privity and admissions of a truck driver and his employer in a negligence action as was the problem in the cited case of Roush v. Alkire Truck Lines, (Mo.) 299 S.W.2d 518, 521. Furthermore, in this suit in equity, the plaintiffs overlook the fact that neither the circuit court nor, if concerned with the testimony, the tax commission had to believe and accept at face value all the testimony adduced by them. Cupples-Hesse Corporation v. State Tax Commission, 329 S.W.2d, 1. c. 701; May Department Stores v. State Tax Commission, 308 S.W.2d, 1. c. 761. Perhaps for the purposes of this ap-

peal it is sufficient to say that the testimony of the defendant collector's expert is not inadmissible for the reasons asserted here.

 The noticeably significant thing about the testimony of the defendant's expert appraiser is that whatever the assessor and his staff may have known of "true value in money" or "fair market value," their final valuation of the plaintiffs' properties for the purposes of taxation was indeed within the values attributed to them by this witness. To briefly illustrate from three of the properties only McCabe-Powers Body Company, Food Equipment Corporation and Be-Mac Transport Company. This witness fixed the value of the McCabe-Powers land at $237,500, it was valued for tax purposes at $75,760, less than 30% of its value. He fixed a value of $104,700 for the Food Equipment land, its assessed value was $30,550, slightly over 30% of its value. And for the Be-Mac Transport land he fixed a value of $429,900, it was assessed at $123,020, slightly more than 30% of its appraised value. Thus, according to this witness, the local taxing authorities, if not the tax commission, either intentionally or unwittingly assessed a large part of the plaintiffs' properties at approximately 30% of their actual or true values, the percentage at which the plaintiffs claim other comparable property in the city and throughout the state is assessed. Thus, as to a large number of the properties, it would be neither proper nor possible for this court to substitute its judgment for that of the taxing authorities. But as to other of the plaintiffs' properties, even these computations and comparisons are not conclusive, in view of the considerations noted throughout the opinion and reviewing the record under the noted limitations, it is not possible for this court to arrive at a finding and conclusion at variance with that inferentially found by the circuit court. In short, without further detailed analysis and illustration, the plaintiffs have not established fraud in the valuation and assessment of their properties. In all other respects than the defendant's proof as to the value of specific property, the plaintiffs' evidence and case fall within and are governed by the previous equity cases if not by those in which the administrative remedy was pursued, particularly St. Louis Electric Bridge Co. v. Koeln, supra; Brinkerhoff-Faris Trust & Savings Co. v. Hill, supra; Bank of Carthage v. Thomas, 330 Mo. 19, 48 S.W.2d 930.

For the reasons indicated the judgment is affirmed.

BOHLING and STOCKARD, CC., concur.

PER CURIAM.

The foregoing opinion by BARRETT, C., is adopted as the opinion of the court.

All of the Judges concur.